## ARIZONA PUBLIC SERVICE CO. ET AL. v. SNEAD, DIRECTOR OF REVENUE DIVISION, TAXATION AND REVENUE DEPARTMENT OF NEW MEXICO, ET AL.

No. 77–1810.  Argued February 26, 1979—Decided April 18, 1979

STEWART, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, MARSHALL, BLACKMUN, POWELL, and STEVENS, JJ., joined.

REHNQUIST, J., filed an opinion concurring in the judgment, in which WHITE, J., joined, *post*, p. 151.

*Daniel J. McAuliffe* argued the cause for appellants. With him on the briefs were *Richard N. Carpenter, Mark Wilmer,* and *William C. Schaab.*

*Jan E. Unna,* Special Assistant Attorney General of New Mexico, argued the cause for appellees. With him on the brief were *Toney Anaya,* Attorney General, and *John P. Frank.**

MR. JUSTICE STEWART delivered the opinion of the Court.

New Mexico has imposed a tax on the privilege of generating electricity within its borders. The question in this case is whether that tax conflicts with federal law, statutory or constitutional.

I

The Four Corners power plants, located in New Mexico's desert northwest, are owned by the appellants, five public utilities companies.[1] Most of the electricity generated at the plants is ultimately sold to out-of-state consumers.[2] New

---

*A brief of *amici curiae* urging reversal was filed by the Attorneys General for their respective States as follows: *Louis J. Lefkowitz* for New York, *Francis B. Burch* for Maryland, *John Degnan* for New Jersey, *William J. Brown* for Ohio, and *Marshall Coleman* for Virginia.

[1] The five appellants are Arizona Public Service Co., El Paso Electric Co., Salt River Project Agricultural Improvement & Power Dist., Southern California Edison Co., and Tucson Gas & Electric Co. Each appellant owns an undivided interest in the Four Corners Power Plant. Tucson Gas & Electric is an equal co-owner with Public Service Co. of New Mexico of units of the San Juan Generating Station. El Paso Electric Co. owns and operates the Rio Grande Generating Station in southern New Mexico.

[2] Arizona Public Service Co. makes some minor retail sales of electricity in New Mexico. El Paso Electric makes retail sales in a significant portion of southern New Mexico and is the only one of the appellants regulated

Mexico imposes a 4% gross receipts tax on retail sellers of electricity,[3] but since the bulk of the appellants' sales are made to consumers in other States, they do not incur significant liability for this tax. In 1975, New Mexico enacted the Electrical Energy Tax Act, the law at issue in this case.[4] That Act imposes a tax on the privilege of generating electricity at the rate of $\frac{4}{10}$ of a mill on each net kilowatt hour of electricity generated. This is roughly equivalent to a 2% tax on the retail value of the electricity. The tax is imposed on *all* companies generating electricity within the State. Section 9 of the Act, however, provides that this electrical energy tax may be fully credited against the company's gross receipts tax liability.

The Act and the regulations implementing it insure that the electrical generating company will receive full credit for the

---

by New Mexico as a public utility. El Paso Electric also sells electricity at wholesale in the Republic of Mexico. In 1975, the five appellants generated nearly a billion kilowatt hours of electricity in New Mexico.

[3] N. M. Stat. Ann. §§ 7–9–1 through 7–9–80 (1978).

[4] The critical sections of the Electrical Energy Tax Act are §§ 3 and 9. They provide in relevant part as follows:

Section 3.

"A. For the privilege of generating electricity in this state for the purpose of sale, whether the sale takes place in this state or outside this state, there is imposed on any person generating electricity a temporary tax, applicable until July 1, 1984, of four-tenths of one mill ($.0004) on each net kilowatt hour of electricity generated in New Mexico..

"B. The tax imposed by this section shall be referred to as the 'electrical energy tax.' " N. M. Stat. Ann. § 7–18–3 (1978).

Section 9.

"B. On electricity generated inside this state and consumed in this state which was subject to the electrical energy tax, the amount of such tax paid may be credited against the gross receipts tax due this state.

"C. The credit under Subsections A or B of this section shall be assigned to the person selling the electricity for consumption in New Mexico on which New Mexico gross receipts tax is due, and the assignee shall reimburse the assignor for the credit." N. M. Stat. Ann. § 7–9–80 (1978).

tax even if it does not itself make retail sales of electricity. This result is accomplished by requiring the generating company to assign its "potential credit" to the retailer, who in turn is required to reimburse the generating company for the value of this credit.[5]   The consequence is that a generating

---

[5] The relevant sections of the regulations provide:

"B. Section 72–16A–16.1 (C) [now codified as § 7–9–80 (C)] requires that a potential credit be assigned to persons purchasing electricity for resale:

"1) to buyers who will potentially consume or use the electricity in New Mexico, or

"2) to buyers who will potentially resell the electricity for consumption in New Mexico; on which an electrical energy tax or similar tax has been levied by New Mexico, by another state or by political subdivisions thereof and paid by the seller.

"Each seller of electricity as described in this paragraph must assign, to each buyer described in subparagraphs (1) and (2) of this paragraph, a pro-rata share of the total available potential credit provided in Section 72–16A–16.1 (A) or (B) [now codified as §§ 7–9–80 (A), 7–9–80 (B)].

"C.   It shall be presumed that the potential credit against gross receipts tax as provided by Section 72–16A–16.1 (C) shall have been assigned when the buyer is in receipt of an invoice from the seller separately stating the amount of the applicable Electrical Energy Tax or similar tax as provided in Section 72–16A–16.1.

"In the absence of bad faith, a wholesale purchaser in New Mexico of electricity may rely upon such an invoice in claiming a credit under Section 72–16A–16.1.

"D.

"1) That portion of the potential credit assigned to a buyer further reselling the electricity for consumption in New Mexico may be credited by the assignee against the gross receipts tax due New Mexico on receipts from the sale of electricity for any month subsequent to July 1, 1975.

"2) That portion of the potential credit assigned to a buyer further reselling the electricity at wholesale to buyers who will resell the electricity for consumption in New Mexico must be reassigned to the subsequent buyer as provided in paragraph B of this regulation.

"3) That amount of the electric energy tax credit which is not assigned to appropriate buyers and which is otherwise creditable under Section 72–

company's 2% tax is completely offset by the credit against the 4% retail sales tax when its electricity is sold within New Mexico. But to the extent that the electricity generated in New Mexico is not sold at retail in the State, there is no gross receipts tax liability against which to offset the electrical energy tax liability of the generating company.

In 1976, the State of Arizona, as a consumer of electricity and *parens patriae* for its citizens, sought to invoke this Court's original jurisdiction by a motion for leave to file a bill of complaint against New Mexico, asking for a declaratory judgment invalidating this New Mexico tax. The litigation now before us had already been initiated in the New Mexico courts by the present appellants, seeking essentially the same relief. This Court denied Arizona leave to file its complaint, concluding:

"[T]he pending state-court action provides an appropriate forum in which the *issues* tendered here may be litigated. If on appeal the New Mexico Supreme Court should hold the electrical energy tax unconstitutional, Arizona will have been vindicated. If, on the other hand, the tax is held to be constitutional, the issues raised now may be brought to this Court by way of direct appeal under 28 U. S. C. § 1257 (2)." *Arizona* v. *New Mexico,* 425 U. S. 794, 797.

One of the alternative scenarios foreseen in our 1976 opinion has now eventuated. The New Mexico Supreme Court has upheld the validity of this energy tax against federal statutory and constitutional attacks, *Arizona Public Serv. Co.* v. *O'Chesky,* 91 N. M. 485, 576 P. 2d 291, and the issues have been brought to this Court by way of direct appeal under 28 U. S. C. § 1257 (2). 439 U. S. 891.

16A–16.1, may be credited against the gross receipts tax due New Mexico on receipts from the sale of electricity for any reporting month subsequent to July 1, 1975." N. M. G. Rev. Regulations 16.1:1 (1976).

## II

The appellants contend that the New Mexico tax is invalid under a specific federal statute as well as under the Commerce, Due Process, and Import-Export Clauses of the Constitution. Because we conclude that under the Supremacy Clause [6] the tax is invalid by reason of this federal statute, we do not reach the substantive constitutional issues.

When Congress enacted the Tax Reform Act of 1976 it included a provision relating to state taxes on electricity. Section 2121 (a) of the Act, 90 Stat. 1914, codified at 15 U. S. C. § 391, provides:

"No State, or political subdivision thereof, may impose or assess a tax on or with respect to the generation or transmission of electricity which discriminates against out-of-State manufacturers, producers, wholesalers, retailers, or consumers of that electricity. For purposes of this section, a tax is discriminatory if it results, either directly or indirectly, in a greater tax burden on electricity which is generated and transmitted in interstate commerce than on electricity which is generated and transmitted in intrastate commerce."

This provision was not in the bill as passed by the House of Representatives. Its genesis was in the Senate Finance Committee, although in its original version the definition of a discriminatory tax was different from that in the law finally enacted:

"For purposes of this section a tax is discriminatory that either directly or indirectly results in the payment of a higher gross or net tax on electricity which is generated and transmitted in interstate commerce than on elec-

---

[6] "[T]he Laws of the United States which shall be made in Pursuance [of the Constitution] . . . shall be the supreme Law of the Land . . . ." U. S. Const., Art. VI, cl. 2.

tricity which is generated and transmitted in intrastate commerce." H. R. 10612, 94th Cong., 1st Sess., § 1323 (1976).

The Committee's Report described the reasons for including the provision:

"The committee has learned that one State places a discriminatory tax upon the production of electricity within its boundaries for consumption outside its boundaries. While the rate of the tax itself is identical for electricity that is ultimately consumed outside the State and electricity which is consumed inside the State, discrimination results because the State allows the amount of the tax to be credited against its gross receipts tax if the electricity is consumed within its boundaries. This credit normally benefits only domiciliaries of the taxing State since no credit is allowed for electricity produced within the State and consumed outside the State. As a result, the cost of the electricity to nondomiciliaries is normally increased by the cost the producer of the electricity must bear in paying the tax. However, the cost to domiciliaries of the taxing State does not include the amount of the tax.

"The committee believes that this is an example of discriminatory State taxation which is properly within the ability of Congress to prohibit through its power to regulate interstate commerce." (Footnote omitted.) S. Rep. No. 94–938, pt. I, pp. 437–438 (1976).

The identity of the unnamed State was disclosed during the course of a subsequent Senate floor debate on a motion by Senator Domenici of New Mexico to strike the provision from the bill. Senators Domenici and Montoya of New Mexico, Senators Fannin and Goldwater of Arizona, and Senator Cranston of California made it clear that the provision was aimed directly at New Mexico's electrical energy tax. 122

Cong. Rec. 24324–24329 (1976). At the conclusion of this debate, Senator Domenici's motion to eliminate the provision was defeated. *Id.*, at 24329.

The appellees concede that this statutory provision was aimed directly at the New Mexico Electrical Energy Tax Act. They contend, however, that the definition of a discriminatory tax was so defused in the Conference Committee that Congress in the law as enacted failed to hit its mark. Specifically, they point out that a discriminatory tax, defined in the Senate Committee's original draft as one that results in "the payment of a higher gross or net tax," became in the statute as enacted one which results in "a greater tax burden" on electricity transmitted out of state than that sold within the State.

We are told that the statutory definition was redrafted in the Conference Committee to allay the concerns of Senators from States with somewhat similar taxes. That Committee's Report gave no reason, however, for the change in language. The Report merely stated:

> *"Senate amendment.*—Under present law, any restrictions on the power of States or their political subdivisions to tax goods or services produced in the taxing State for nondomiciliary use outside the taxing State are derived from court interpretations of the interstate commerce clause of the Constitution.
>
> "The Senate amendment prohibits any State or political subdivision of a State from directly or indirectly imposing any tax on the generation or transmission of electricity which discriminates against out-of-State users. This provision is effective for taxable years beginning after June 30, 1974.
>
> *"Conference agreement.*—The conference agreement follows the Senate amendment." H. R. Conf. Rep. No. 94–1515, p. 503 (1976).

There is thus no legislative history to show what the Conference Committee's drafting change was intended to accom-

plish. But the provision as enacted is far from the "sterile" legislation that the appellees contend it is. To the contrary, the provision clearly operates, we think, to carry out the expressed intent of the Senate to invalidate the New Mexico tax.

The Act prohibits "a tax on or with respect to the generation or transmission of electricity" which "results, either directly or indirectly, in a greater tax burden on electricity" consumed outside of New Mexico than that consumed in the State. The appellees urge that this statutory provision is no more than a prohibition of a tax that is invalid under the constitutional test of the Commerce Clause. That test, they say, requires examination of New Mexico's total tax structure to determine whether the State in fact imposes a greater tax burden on electricity sent out of state. See *Halliburton Oil Well Cementing Co.* v. *Reily,* 373 U. S. 64, 69. And the tax in question, they say, clearly survives such an examination. Power sold within New Mexico, they argue, is subject to a 4% tax: 2% from the electrical energy tax and 2% from the gross receipts tax. By contrast, New Mexico subjects electricity sent out of state only to its 2% generation tax. The appellees contend, therefore, that if there is any discrimination in New Mexico's taxing structure, it is discrimination against electricity consumed within the State.

But, whatever the validity may be of the Commerce Clause test advanced by the appellees, the federal statutory provision is directed specifically at a state tax "on or with respect to the generation or transmission of electricity," not to the entire tax structure of the State. The tax imposed by New Mexico's Electrical Energy Tax Act is concededly a tax on the generation of electricity. The tax-credit provisions of the Act itself insure that locally consumed electricity is subject to *no* tax burden from the electrical energy tax, while the bulk of the electricity generated in New Mexico by the appellants is subject to a 2% tax, since it is sold outside the State. To look

narrowly to the type of tax the federal statute names, rather than to consider the entire tax structure of the State, is to be faithful not only to the language of that statute but also to the expressed intent of Congress in enacting it. Because the electrical energy tax *itself* indirectly but necessarily discriminates against electricity sold outside New Mexico, it violates the federal statute.[7]

The appellees also argue that if the federal statute is construed to invalidate the New Mexico tax, it exceeds the permissible bounds of congressional action under the Commerce Clause. In view of the broad power of Congress to regulate interstate commerce, this argument must be rejected. See *Wickard* v. *Filburn,* 317 U. S. 111; *Katzenbach* v. *McClung,* 379 U. S. 294. Here, the Congress had a rational basis for finding that the New Mexico tax interfered with interstate commerce, and selected a reasonable method to eliminate that interference. The legislation thus was within the constitutional power of Congress to enact. See *Heart of Atlanta Motel, Inc.* v. *United States,* 379 U. S. 241, 258–259; *United States* v. *Wrightwood Dairy Co.,* 315 U. S. 110, 119.

The generation of electricity in the Four Corners region undoubtedly also generates environmental and other problems for New Mexico. There is no indication that Congress intended to prevent the State from taxing the generation of

---

[7] This is not a case where the State has imposed an evenhanded tax on the generation of electricity *and* has lowered the gross receipts or sales tax on the sale of electricity. Although New Mexico argues that such is the practical result of its tax structure, the credit provisions of the Electrical Energy Tax Act itself shift the legal incidence of the gross receipts tax credit directly to the generating utility.

The *amici* in this case have pointed to several similar state taxes on the generation of electricity. Pa. Stat. Ann., Tit. 72, § 8101 (Purdon Supp. 1978–1979); Wash. Rev. Code §§ 82.16.020, 82.16.050 (1976); W. Va. Code §§ 11–13–2d, 11–13–2m (Supp. 1978). None of these States, however, has adopted precisely the scheme used by New Mexico, and we express no opinion as to the validity of these or any other state tax laws.

electricity to pay for solutions to these problems. But the generation of electricity to be sent to Phoenix causes no more problems than the generation of electricity to be sent to Albuquerque. Congress required only that New Mexico, if it chooses to tax the generation of electricity for consumption in either city, tax it equally for each.

The judgment is reversed.

*It is so ordered.*

MR. JUSTICE REHNQUIST, with whom MR. JUSTICE WHITE joins, concurring in the judgment.

I concur in the judgment of the Court because I agree that the tax imposed by New Mexico's Electrical Energy Tax Act on the generation of electricity within its borders is forbidden by § 2121 (a) of the Tax Reform Act of 1976, codified at 15 U. S. C. § 391.

I think that the statutory question is somewhat closer than the Court intimates, both as to the meaning of the actual language of § 391 and as to its legislative history. As the Court indicates and as appellees concede, the debate on the floor of the Senate makes it clear that the original version of § 391 was aimed at New Mexico's energy tax. See *ante,* at 147–148; Brief for Appellees 14. New Mexico argues here that the original provision was redrafted in conference in order to "save" somewhat similar tax statutes in other States and that, as redrafted, § 391 is "sterile" legislation: It accomplishes no more than the Commerce Clause of the Constitution would accomplish of its own force. See *ante,* at 149; Brief for Appellees 11, 16, 24. Congress is vested with the legislative power of the United States, and not the judicial power, and therefore it may be unrealistic to assume automatically that Congress never passes a "sterile" law, in the sense that the provision does no more than the Constitution would have done had Congress never enacted the law. But, in my view, the laws enacted by Congress certainly are entitled to a presumption

to that effect. Since the effect of § 391 is not entirely clear from its language and legislative history, I would give some weight to that presumption in reaching the conclusion that § 391 extends beyond the requirements of the Commerce Clause* and outlaws the New Mexico energy tax here at issue.

---

*There is no question in my mind that if § 391 were coextensive with the Commerce Clause, New Mexico's energy tax would be valid for substantially the same reasons advanced by appellees. *Ante,* at 149; see *Halliburton Oil Well Cementing Co.* v. *Reily,* 373 U. S. 64, 69–70 (1963); *Gregg Dyeing Co.* v. *Query,* 286 U. S. 472, 480 (1932); *Public Utility Dist. No. 2* v. *State,* 82 Wash. 2d 232, 239–240, 510 P. 2d 206, 210–211, appeal dismissed for want of substantial federal question, 414 U. S. 1106 (1973).