NATIONAL RAILROAD PASSENGER CORPORATION, a corporation of the District of Columbia, Plaintiff,

v.

NEW CASTLE COUNTY, a political subdivision of the State of Delaware, and the City of Wilmington, a Delaware municipal corporation, Defendants,

NEW CASTLE COUNTY, a political subdivision of the State of Delaware, Third-Party Plaintiff,

v.

CHRISTIANA SCHOOL DISTRICT, Colonial School District, Red Clay Consolidated School District, and New Castle County Vocational Technical School District, Third-Party Defendants.

Civ. A. No. 84–561–JLL.

United States District Court, D. Delaware.

April 8, 1986.

See also, D.C., 636 F.Supp. 1482.

Richard R. Wier, Jr. and Walter P. McEvilly, Jr., of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del. (David J. Carol of National Railroad Passenger Corp., Washington, D.C., of counsel), for plaintiff.

Dennis J. Siebold, Richard A. Hauge, and Douglass Lee Mowrey of New Castle County Law Dept., Wilmington, Del., for defendant New Castle County.

Nancy Ellen Davitt of City of Wilmington Law Dept., Wilmington, Del., for defendant City of Wilmington.

Henry N. Herndon, Jr. and Richard D. Kirk of Morris, James, Hitchens & Williams, Wilmington, Del., for third-party defendants, Christiana School Dist., Colonial School Dist. and Red Clay Consol. School Dist.

Jeffrey M. Weiner of Bayard, Handelman & Murdoch, P.A., Wilmington, Del.,

for third-party defendant New Castle County Vocational Technical School Dist.

## OPINION

LATCHUM, Senior District Judge.

Plaintiff National Railroad Passenger Corporation ("Amtrak") brought this action seeking a refund of real property taxes paid to New Castle County (the "County") and the City of Wilmington (the "City") for the period between October 1, 1981 and June 30, 1982. Both the County and City have filed answers to Amtrak's complaint, and the County has filed a counterclaim seeking payment of real property taxes levied after June 30, 1982. Since the County is required by 14 Del.C. § 1917 to bill and collect certain school district taxes, the County filed a third-party complaint against Christiana School District, Colonial School District, Red Clay Consolidated School District, and New Castle County Vocational Technical School District.

Amtrak has answered the County's counterclaim and all of the third-party defendants have appeared and answered. Amtrak has now moved for summary judgment pursuant to Fed.R.Civ.P. 56.[1] After considering the parties' submissions on this motion, the Court has determined that there is no genuine issue as to any material fact and that Amtrak is entitled to judgment as a matter of law.

## I. FACTUAL BACKGROUND

The material facts in this case are undisputed. Amtrak is a District of Columbia corporation which provides intercity and commuter rail passenger service throughout much of the United States. Amtrak owns twenty-one parcels of real estate in the County and paid $46,343.29 in real property taxes on these parcels to the County for the tax year July 1, 1981 through June 30, 1982.[2] This amount is the aggregation of the following entities' tax levies: the County levied $7,021.11 in property taxes, Christiana School District levied $6,616.89 in school taxes, Colonial School District levied $28,053.27 in school taxes, Red Clay Consolidated School District levied $2,123.52 in school taxes, and New Castle County Vocational Technical School District levied $2,528.50 in school taxes.[3]

Amtrak also owns eleven parcels of real estate in the City and paid a total of $38,-259.38 in real property taxes to the City for the tax year July 1, 1981 through June 30, 1982.[4]

On September 10, 1982, Congress enacted Public Law 97–257 granting Amtrak an exemption from all state and local taxation from and after October 1, 1981. The statute provides:

Notwithstanding any other provision of law, the National Railroad Passenger Corporation (the "Corporation") shall be exempt from any taxes or other fees imposed by any State, political subdivision of a State, or a local taxation authority which are levied on the Corporation, or any railroad subsidiary thereof, from and after October 1, 1981 including such taxes and fees levied after September 30, 1982: Provided, however, That notwithstanding any provision of law, the Corporation shall not be exempt from any taxes or other fees which it is authorized to pay as of September 10, 1982. Taxes and fees levied on the Corporation or any railroad subsidiary thereof by States, political subdivisions of States, or local taxing authorities with respect to periods beginning prior to October 1, 1981, shall be payable in proportion to the part of the relevant tax period which elapsed prior to such date. Notwithstanding the provision of section 1341 of Title 28, the United States district courts shall originate jurisdiction over any civil actions brought by the Corporation to enforce the exemption conferred hereunder and

---

1. Docket Item ("D.I.") 18.

2. D.I. 20, Exhibit A at 1–2.

3. D.I. 23, Appendix A.

4. Id. at 2.

may grant equitable or declaratory relief as requested by the Corporation.

Pub.L. 97–257, 96 Stat. 852 (1982) (codified at 45 U.S.C. § 546b (Supp.1985)). As a result of this statute, Amtrak sought refunds of real estate taxes paid to the County and City for the period from October 1, 1981 through June 30, 1982.

## II. SUMMARY JUDGMENT

The legal standards applicable to summary judgment motions are well settled. To prevail in a motion for summary judgment under Fed.R.Civ.P. 56(c), the moving party must demonstrate that there is no issue regarding any material fact in the case and that the moving party is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *EEOC v. Westinghouse Electric Corp.*, 725 F.2d 211, 218 (3d Cir.1983), *cert. denied*, —— U.S. ——, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984). In deciding whether to grant summary judgment, the Court must draw all inferences from the evidentiary sources in the record in the light most favorable to the non-moving party. *Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608; *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976).

In opposing Amtrak's motion for summary judgment, the City and County advance six mutually exclusive, and partially mutually defeating, arguments. These arguments in opposition to Amtrak's summary judgment motion will be discussed *seriatim*.

### a. Statutory Construction.

The City's two arguments in opposition to Amtrak's summary judgment are essentially predicated on statutory construction. First, the City argues that since Amtrak paid the local taxes with funds appropriated or received prior to October 1, 1981, Congress did not intend to afford Amtrak a refund for taxes paid prior to October 1, 1981 for a taxable period after October 1, 1981. Second, the City contends that they fall within the exception to the 546b exemption from State and local taxes granted to Amtrak. The exception states that: "the

Corporation [Amtrak] shall not be exempt from any taxes or other fees which it is authorized to pay as of September 10, 1982."

However, an examination of the legislative history preceding the enactment of section 546b uncovers the fallacy of the City's arguments. Congress enacted section 546b to exempt Amtrak from liability for the same local taxes Amtrak paid to, and now seeks to recover from, the City and County. The reasoning for the exemption is set forth in the Senate Appropriations Committee Report:

> It is generally recognized that State and local taxes on a primarily Federal investment are inappropriate. Moreover, such taxation serves to erode the revenue-to-cost ratios which impact on whether states and localities continue to receive the benefit of Amtrak service. The Committee believes it is unreasonable for Federal funds to be granted to Amtrak to provide a tax windfall to States and localities, and consequently the bill prohibits Amtrak from using any appropriated funds or assets for the payment of any State and local taxes.

S.Rep.No. 253, 97th Cong., 1st Sess. 103 (1981).

The above quoted language is part of the legislative history relating to the 1982 Transportation Appropriations Act (Pub.L. 97–102, 95 Stat. 1442), which included a provision that deferred Amtrak's payment of any State or local taxes for one year. It was Public Law 97–257 (codified at 45 U.S.C. § 546b) which converted the deferral into a permanent exemption from State and local taxes. The Committee further expounded on the reasoning for the exemption:

> This action was taken in recognition of the fact that there are many parts of the country which would gladly pay an amount equal to local or State taxes owed by Amtrak in order to have the benefit of Amtrak service. It remains the Committee's judgment that those who receive this service have some obli-

gation to contribute toward its continuation. At a time when local jurisdictions are demanding that nationwide rail passenger service be maintained, it seems reasonable to provide for a "user contribution" whereby those areas receiving the service in turn contribute to Amtrak's continued existence through tax relief.

S.Rep.No. 516, 97th Cong., 2d Sess. 170 (1982).

 As with all cases involving statutory interpretation, the Court's analysis must commence with the language employed by Congress. *See, e.g., North Dakota v. United States,* 460 U.S. 300, 103 S.Ct. 1095, 1102, 75 L.Ed.2d 77 (1983). The customary presumption is that the words used by Congress to express its desires are conclusive evidence of legislative purpose. *See, e.g., Griffin v. Oceanic Contractors Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982). Here, the statutory language and the legislative intent are in harmony.

The City argues for an interpretation of section 546b which would only allow proration of the taxes if Amtrak had paid them after October 1, 1981. Since Amtrak prepaid in full for the tax year July 1, 1981 through June 30, 1982, the City argues that Amtrak should not be afforded a refund because Amtrak made its payment with monies appropriated from the previous fiscal year. Not only is the City's proposition sophistic, but it disregards both the specific language contained in section 546b and the purpose of the statute. An application of the City's interpretation of section 546b would lead to the conclusion that, had Amtrak waited until October 1, 1981, to pay its property taxes or made only a prorata payment for taxes due from July 1, 1981 through September 30, 1981, the City would be unable to collect taxes for the balance of the taxable period. This entirely arbitrary interpretation of section 546b would make the fortuitous date of payment by Amtrak controlling, and therefore would lead to an unpalatable result.

The plain language of the statute provides that "with respect to periods beginning prior to October 1, 1981, [taxes] shall be payable in proportion to the part of the relevant tax period which elapsed prior to such date." Thus, the plain import and phraseology of section 546b allows State and local taxing authorities to collect taxes only for periods up to and including September 30, 1981. Accordingly, the date which Amtrak decides to cut a check for payment of taxes, which is largely a function of the due dates imposed by State and local authorities and their respective late penalties, should not be controlling as a matter of statutory construction and interpretation.

This result is further borne out in the legislative history of section 546b, which contemporaneously undercuts the City's second argument. The City attempts to find support for its contention that Congress intended section 546b to exempt Amtrak only from those taxes it had not already paid in the "authorized to pay" portion of the exception to the 546b exemption. In Public Law 97–102, 95 Stat. 1442 (1981), Congress authorized Amtrak, despite the general tax deferral (which later became the section 546b exemption in Public Law 97–257), to "pay all taxes or other fees appropriately levied on its facilities in Beach Grove, Indiana." When Congress made the deferral in Public Law 97–102 permanent in Public Law 97–257, instead of continuing the authorization for Amtrak to pay all taxes levied on the Beach Grove facility,[5] Congress used ambiguous language with respect to the Beach Grove exception. The exception to the exemption provided in section 546b which contains the "authorized to pay" language must relate to the exception granted to Beach Grove permitting it to continue taxing Amtrak's facilities situated within its boundaries.

---

5. Apparently, Congress granted an exception to Beach Grove, Indiana, from the exemption from taxes granted to Amtrak because Amtrak's facilities in Beach Grove comprise over 75% of Beach Grove's tax base. *See* D.I. 24 at 5.

■ If this Court were to adopt either of the City's proffered interpretations of section 546b, a windfall would be awarded to any State or local taxing authority which received payment of taxes from Amtrak prior to October 1, 1981. The arbitrariness of this contention must be rejected by the Court. Accordingly, as a matter of statutory construction, Amtrak is entitled to a refund from the City and County for taxes paid for the period October 1, 1981 through June 30, 1982.

**b. The Tenth Amendment.**

The County argues that section 546b violates the Tenth Amendment because section 546b impermissibly intrudes on the State's reserved taxing power. Despite the County's contention, the City, quite correctly, admits that section 546b is constitutional under the standards set forth in the Supreme Court's Tenth Amendment jurisprudence. U.S. Const. amend. X provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively or to the people."

The City and County both originally asserted the affirmative defense that section 546b was unconstitutional because it impaired the ability of a State to function as a sovereign, independent State in violation of the Tenth Amendment. In the fall of 1984 when the City's and County's answers were filed, that defense had a thread of viability based on the Supreme Court's analysis in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2645, 49 L.Ed.2d 245 (1976). *Usery* was subsequently construed in *Hodel v. Virginia Surface Mining and Reclamation Ass'n*, 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981), as establishing four conditions that must be satisfied before a State activity may be deemed immune under the Tenth Amendment from a particular federal regulation promulgated pursuant to the Commerce Clause.

However, after the defendants asserted their affirmative defenses, and before Amtrak filed its motion for summary judg-

ment, the Supreme Court overruled *Usery* in *Garcia v. San Antonio Metropolitan Transit Auth.*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). Although the City has dropped its Tenth Amendment affirmative defense, concluding that "it is no longer tenable"[6] after the *Garcia* decision, the County still chooses to pursue it.

The *Garcia* court concluded that the limits of Congress' power to legislate under the Commerce Clause will be insured by the "built-in restraints that our system provides through State participation in federal governmental action." *Id.*, 105 S.Ct. at 1020. In essence, *Garcia*, a five to four decision, adopted the position advocated by the four dissenting justices in *Usery*, who argued that the Tenth Amendment did not impose any independent limits on federal power when Congress acted pursuant to the Commerce Clause. As the four dissenters noted in *Garcia*, the Court's majority position in *Garcia* "effectively reduces the Tenth Amendment to meaningless rhetoric when Congress acts pursuant to the Commerce Clause." *Id.* at 1022.

■ Accordingly, since Congress has legislated pursuant to its Art. I, § 8, cl. 3 enumerated power, *Garcia* is controlling and the County's Tenth Amendment argument is rejected.

**c. The Necessary and Proper Clause.**

In *Department of Revenue and Taxation v. National R.R. Passenger Corp.*, No. C82–0320–B (D.Wyo. Dec. 15, 1982), the United States District Court for the District of Wyoming found 45 U.S.C. § 546b constitutionally valid under the Necessary and Proper Clause. The Clause makes explicit the doctrine of implied powers by providing that Congress may "make all Laws which shall be necessary and proper for carrying into Execution" the specific legislative powers granted by Art. I § 8 or by other parts of the Constitution. U.S. Const. art. I, § 8, cl. 18. The Necessary and Proper Clause has historically been given a broad reading by the United

---

**6.** D.I. 22 at 4.

States Supreme Court. As one commentator has noted, "[the Necessary and Proper Clause permits] Congress to employ all means not prohibited by the Constitution and rationally related to ends within the compass of constitutionally enumerated powers." L. Tribe, American Constitutional Law 230 (1978).

The County argues that the Wyoming District Court's decision upholding section 546b under the Necessary and Proper Clause is flawed because Amtrak is not a government instrumentality performing a governmental function. The County attempts to justify its unduly restrictive reading of the Necessary and Proper Clause by focusing on Amtrak's enacting legislation which provides, in pertinent part, that "[t]he Corporation will not be an agency or establishment of the United States government." 45 U.S.C. § 541.

■ Nevertheless, Congress has the power to create a tax exemption for Amtrak because Amtrak is a creation of the federal government and performs powers delegated and mandated by Congress. When Congress creates a corporation through which the federal government acts, the activities of the federally created corporation are governmental. *Federal Land Bank v. Bismarck Lumber Co.,* 314 U.S. 95, 102, 62 S.Ct. 1, 5, 86 L.Ed. 65 (1941). Moreover, "any constitutional exercise of [Congress'] delegated powers is governmental." *Id.* In *Pittman v. Home Owners' Corp.,* 308 U.S. 21, 60 S.Ct. 15, 84 L.Ed. 11 (1939), the Supreme Court upheld the constitutionality of a statutory exemption from state taxation granted to the Home Owners Loan Corporation. The Court observed that "Congress has not only the power to create a corporation to facilitate the performance of governmental functions, but has the power to protect the operations thus validly authorized." *Id.* at 32–33, 60 S.Ct. at 17–18. Since Congress is granting Amtrak an exemption from State and local taxes to alleviate the need for extra federal subsidies, Congress is properly acting pursuant to the Commerce Clause, one of its Article I enumerated powers.

Furthermore, additional factors surrounding Congress' creation of Amtrak's unique role in the providing of intercity passenger rail service demonstrates that Amtrak is a government instrumentality. Although Congress created Amtrak as a "for-profit" corporation, *see* 45 U.S.C. § 541, Congress required Amtrak to recover only half of its operating costs from revenues. 45 U.S.C. § 564(c)(4)(A). This revenue shortfall is recuperated from federal subsidies. Additionally, 45 U.S.C. § 854 authorized 2.3 billion dollars for capital improvements to Amtrak's Northeast corridor. Congress also periodically changes Amtrak's regulatory scheme, specifies the composition of Amtrak's board of directors, and designates Amtrak's national route system. *See* 45 U.S.C. § 541 *et seq.*

■ Accordingly, Congress' grant of immunity to Amtrak from State and local taxation is within the scope of power given to Congress under the Necessary and Proper Clause.

### d. The Commerce Clause.

The Wyoming District Court also found section 546b constitutional under the Commerce Clause, concluding that the Commerce Clause invests Congress with the authority to preclude lesser governments from levying taxes on Amtrak. Nevertheless, the County argues that section 546b is overbroad because the statute grants Amtrak a State and local tax exemption on all of its activities, and is thus not limited to Amtrak's transportation activities.

Again, the County's interpretation of section 546b's viability under the Commerce Clause is unduly restrictive. Rather, this Court finds the analysis set forth by the Wyoming District Court to be extremely persuasive. The Supreme Court has established a not very rigorous two-pronged inquiry when Congress legislates under the Commerce Clause. First, there must be a rational basis supporting a congressional finding that the legislation affects interstate commerce. Second, the means select-

ed by Congress must be "reasonably adapted to the end" sought by Congress. *See Hodel*, 452 U.S. 264, 101 S.Ct. 2354; *Arizona Public Service Co. v. Snead*, 441 U.S. 141, 99 S.Ct. 1629, 60 L.Ed.2d 106 (1979).

As the legislative history to section 546b makes abundantly clear, *see, e.g.*, S.Rep. No. 253, *supra*, Congress has sought to reduce federal subsidies to Amtrak. The means Congress has chosen to achieve this end, after a study by the Department of Transportation ("DOT"), is to relieve Amtrak from all State and local tax liability. The DOT study concluded that the payment of State and local taxes was diverting some of Amtrak's federal subsidies away from their intended objective of improving rail service; Congress subsequently concurred in DOT's reasoning and partially ameliorated the situation by granting the State and local tax exemption to Amtrak so it could spend more money on improving rail service and less on taxes. *See* U.S. Department of Transportation, Federal Railroad Administration, Amtrak State and Local Taxation Study (1980).[7]

The *Garcia* majority, in discussing the role of Congress in local mass transit systems, reasoned:

> Congress has not simply placed a financial burden on the shoulders of State's and localities that operate mass-transit systems, but has provided substantial countervailing financial assistance as well, assistance that may leave individual mass transit systems better off than they would have been had Congress never intervened at all in the area. Congress' treatment of public mass transit reinforces our conviction that the national political process systematically protects States from the risk of having their functions in that area handicapped by Commerce Clause regulation.

105 S.Ct. at 1020. This reasoning is equally applicable to rail passenger systems. ■ Because Congress had a rational basis for concluding that State and local taxes interfered with Amtrak's ability to provide improved intercity rail passenger service, and selected a reasonable method to achieve this legitimate end, section 546b is within constitutional power of Congress to legislate pursuant to the Commerce Clause. Accordingly, all of defendants' constitutionally based attacks on section 546b are unmeritorious.

### e. State Statute of Limitations.

The County contends that Amtrak's action for refund is time barred under 10 *Del.C.* § 8125. The statute provides in pertinent part: "Actions for anything done in pursuance of Chapter 83 of Title 9, *relating to valuation and assessments of property*, shall be brought within 6 months." (Emphasis added.)

■ The plain language of section 8125 demonstrates that this statute is inapplicable to Amtrak's suit for a tax refund. As the clause "relating to valuation and assessment of property" makes clear, the six-month time bar applies only to the valuation and assessment of property, not to actions for tax refunds.

■ Accordingly, Amtrak's action is not barred by the statute of limitations contained in 10 *Del.C.* § 8125.

### III. CONCLUSION

The Court concludes that Amtrak is entitled to a refund of taxes paid to both the City and the County as a matter of law, and will therefore grant Amtrak's motion for summary judgment. Both the statutory language contained in section 546b, as well as its legislative history, demonstrate that Amtrak is entitled to a refund for any taxes paid and applied to periods after September 30, 1981. Moreover, section 546 is not constitutionally defective, nor is Amtrak's action barred by 10 *Del.C.* § 8125. Because of the Court's ruling on Amtrak's summary judgment motion, the County's counterclaim for additional taxes and penal-

**7.** The study concluded that Amtrak is a "public investment for the public benefit which should not incur State and local taxes as it performs its congressionally directed mission." *Id.* at 22.

ties for periods after June 30, 1982, is dismissed.

An order, which will include the exact amounts Amtrak is entitled to recover from the City and the County,[8] will be entered in accordance with this Opinion.

---

8. As mentioned earlier, the City and County tax year involved in this action ran from July 1, 1981 to June 30, 1982. The time frame for which a refund is due ran from October 1, 1981 to June 30, 1982—a period of nine months, which equates pro rata to 75 percent of the amount paid for the entire taxable year.