United States Court of Appeals,

Fifth Circuit.

No. 97-20508

Summary Calendar.

DEER PARK INDEPENDENT SCHOOL DISTRICT; Galena Park Independent School District; Sheldon Independent School District, Plaintiffs-Appellants,

v.

HARRIS COUNTY APPRAISAL DISTRICT; et al., Defendants,

Harris County Appraisal District; Shell Chemical Corporation; Shell Oil Company; Marubeni Tubulars Incorporated; Mitsui Tubular Products Incorporated; Lyondell-Citgo Refining Company Limited; Crown Central Petroleum Corporation; Vinson Supply Company; Siderca Corporation, Defendants-Appellees.

GALENA PARK INDEPENDENT SCHOOL DISTRICT, Plaintiff-Appellant,

v.

Harris County Appraisal District; et al., Defendants,

HARRIS COUNTY APPRAISAL DISTRICT; Marubeni Tubulars Incorporated; Mitsui Tubular Products Incorporated; Lyondell-Citgo Refining Company Limited; Crown Central Petroleum, Defendants-Appellees.

SHELDON INDEPENDENT SCHOOL DISTRICT, Plaintiff-Appellant,

v.

HARRIS COUNTY APPRAISAL DISTRICT (Central); et al., Defendants,

Harris County Appraisal District (Central); Vinson Supply Company; Siderca Corporation, Defendants-Appellees.

Jan. 22, 1998.

Appeal from the United States District Court for the Southern District of Texas.

Before REYNALDO G. GARZA, SMITH and BENAVIDES, Circuit Judges.

PER CURIAM:

This case comes from a final summary declaratory judgment of

1

the United States District Court for the Southern District of Texas, Judge Lynn Hughes, presiding. This case was decided on cross-motions for summary judgment. The district court granted summary judgment in favor of the Defendants-Appellees, the Harris County Appraisal District, et al. (the "Companies"). The Plaintiffs-Appellants, the Deer Park Independent School District, et al. (the "School Districts") timely appealed, and the matter now lies before this panel.

## Background

The School Districts[1] filed suit in the district court on September 30, 1996, seeking a declaratory judgment stating that 19 U.S.C. § 81o(e) is unconstitutional. This statute grants exemptions from state and local ad valorem taxes on property to businesses located inside of Foreign Trade Zones ("FTZs"). Specifically, the School Districts alleged that these exemptions unconstitutionally deprived them of tax revenue.

The Companies[2] are various corporations with operations in the FTZs. Both sides have stipulated that the property involved in

---

[1]The School Districts are: The Deer Park Independent School District, the Galena Park Independent School District, and the Sheldon Independent School District. The Companies asked that the appeal of the Sheldon Independent School District be dismissed for want of jurisdiction. We do not pass on that point at this time, because it is moot, given the outcome of this case.

[2]The Companies are: the Lyondell-Citgo Refining Company, Ltd., the Crown Central Petroleum Corporation, the Shell Oil Company, the Shell Chemical Corporation, the Siderca Corporation, the Vinson Supply Company, Mitsui Tubular Products, Inc., and Marubeni Tubulars, Inc. The Harris County Appraisal District was included as a defendant in this suit because of its role as tax assessor.

this dispute is either (i) tangible personal property imported from outside the United States and held in an activated FTZ for the purpose of storage, sale, exhibition, repackaging, assembly, distribution, sorting, grading, cleaning, mixing, display, manufacturing, or processing, or (ii) tangible personal property produced in the United States and held in an activated FTZ for exportation, either in the above form or as altered by the above processes. But for the operation of § 810(e), all or a significant part of the property would be taxable by the School Districts.

Several related cases were consolidated into this one, and the parties stipulated to the relevant facts. Both sides submitted motions for summary judgment, and on May 16, 1997, the district court made its ruling. The district court granted summary judgment in favor of the Companies, and denied the School Districts' motion for summary judgment.

The School Districts timely appealed, claiming that the district court erred in granting summary judgment in favor of the Companies. They argue that § 81*o*(e) is an unconstitutional exercise of Congress' power under the Commerce Clause, and violates the Tenth Amendment and the Guarantee Clause of the Constitution. Upon review of the pleadings, briefs, and record on file, we find no reversible error and affirm the decision of the district court.

## Standard of Review

Summary judgment is appropriate if the record discloses that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

3

Fed.R.Civ.Proc. 56(c); *Sims v. Monumental General Ins. Co.,* 960 F.2d 478, 479 (5th Cir.1992). The pleadings, depositions, admissions, and answers to interrogatories, together with affidavits, must demonstrate that no genuine issue of material fact remains. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We review the facts drawing all inferences in favor of the party opposing the motion. *Reid v. State Farm Mutual Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986).

In addition to the aforementioned general procedural matters, we review challenges to the validity of a Congressional exercise of power under the Commerce Clause using the following standards. The burden for the challenger in cases such as this is high. This Court must determine only (1) whether a rational basis exists for finding that the regulated activity affects interstate commerce, and (2) whether the means chosen by Congress were "reasonably adapted to the end permitted by the Constitution." *Hodel v. Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 276, 101 S.Ct. 2352, 2360, 69 L.Ed.2d 1 (1981). The Commerce Clause power is complete in itself and is only limited by those limits prescribed in the Constitution. *Id.*

Congress' regulatory power under the Commerce Clause may be used to regulate the use of the channels of interstate commerce, Congress may protect and regulate the instrumentalities of interstate commerce (including people or things in interstate commerce), and Congress may regulate those activities having a substantial relation to interstate commerce. *U.S. v. Lopez,* 514

4

U.S. 549, 556, 115 S.Ct. 1624, 1629, 131 L.Ed.2d 626 (1995). While the states do retain broad powers under the Constitution, they "only do so to the extent that the Constitution has not divested them of their original powers and transferred these powers to the Federal Government." *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 549-550, 105 S.Ct. 1005, 1016-17, 83 L.Ed.2d 1016 (1985). The right to regulate foreign and interstate commerce is one of powers expressly granted to the federal government by Art. I, § 8, cl. 3 of the Constitution.

## Analysis

While all the claims are related, the primary contention of the School Districts is that Congress did not have power under the Commerce Clause to enact and enforce § 81*o*(e), and as a result, the statute should be declared unconstitutional. We have already stated the broad extent of Congress' powers under the Commerce Clause, as well as the fact that the standard of review is whether there was a rational basis for Congress' actions and whether the means chosen were reasonably adapted to the ends. *Hodel,* 452 U.S. at 276, 101 S.Ct. at 2360.

Congress' actions in this case were rational and pass muster. First of all, there can be no doubt that the activities in the FTZs constitute foreign, and by extension, interstate commerce, so they are within the purview of the Congress. Next, it is completely rational to believe that the imposition of ad valorem taxes on the property in the FTZs would affect interstate and foreign commerce, and that forbidding such taxes would provide uniform treatment of

FTZs throughout the country. Such uniformity in foreign commerce is a well-recognized federal interest. *Japan Line, Ld. v. County of Los Angeles,* 441 U.S. 434, 448-449, 99 S.Ct. 1813, 1821-1822, 60 L.Ed.2d 336 (1979). Further, in enacting § 81*o*(e), Congress explicitly found that the aims of the original act of Congress which created FTZs were being frustrated by non-uniform local and state ad valorem taxes. Congress believed, rationally, that this negatively affected interstate and foreign commerce, and fashioned a reasonable response.

Also this law is of importance to Texas because the Texas Constitution specifically lists the permissible exemptions from ad valorem taxation, and property within FTZs is not on the list. For this reason, Texas Senators Lloyd Bentsen and John Tower, in conjunction with Texas Congressmen Jim Wright and Jack Brooks, sponsored this law. This law was passed to help Texas, by encouraging industry, and is not a type of oppression or "dragooning" of the state, as the School Districts contend.

Further, the plenary power granted to Congress under the Commerce Clause includes the power to protect interstate and foreign commerce from taxation. *State Bd. of Insurance v. Todd Shipyards Corp.,* 370 U.S. 451, 456, 82 S.Ct. 1380, 1383, 8 L.Ed.2d 620 (1962). This power to grant or withhold protection from regulation or taxation "is so complete that its ideas of policy should prevail." *Id.* Congress' actions were well within its power under the Commerce Clause, and pass muster under the standards listed.

6

The School Districts also claim that § 81*o*(e) violates the Tenth Amendment. As stated previously, the Tenth Amendment's reservation to the states of power not conferred on the federal government in no way inhibits the activities of the federal government in situations in which a power has been so conferred. *See Garcia,* 469 U.S. at 549-550, 105 S.Ct. at 1016-1017. The explicit granting of power to the Congress, in regard to its right to regulate foreign and interstate commerce, in conjunction with the Supremacy Clause, clearly gives Congress power over this situation. *See e.g., Seniors Civil Liberties Ass'n, v. Kemp,* 965 F.2d 1030, 1034 (11th Cir.1992).

Further, historically, Congressional prohibitions on state taxation have been upheld over Tenth Amendment challenges. For example, even when *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976) was the lead Supreme Court case on these matters,[3] the Supreme Court upheld a federal law which preempted a state tax that discriminated against the sale of electricity outside the state. *Arizona Public Service Co. v. Snead,* 441 U.S. 141, 99 S.Ct. 1629, 60 L.Ed.2d 106 (1979). The Supreme Court rejected the argument that Congress lacked authority under the Commerce Clause to regulate state taxation, stating that Congress had broad power in this sphere, had a rational basis for finding that the tax interfered with interstate commerce, and the means selected were reasonable to achieve Congress' ends. *Id.* at

_____

[3]*National League of Cities* was overruled by *Garcia,* 469 U.S. at 557, 105 S.Ct. at 1020.

150, 99 S.Ct. at 1634. More recent cases have given support to this proposition as well. For example, in *New Jersey v. Consolidated Railroad Corp.,* 690 F.Supp. 1061 (Reg'l Rail Reorg.Ct.1988), the court held that Congress could exempt Conrail (a privately owned railroad) from taxation, rejecting the state's Tenth Amendment claim.

Congress acted well within its powers under the Commerce Clause in this case, its belief that this affected interstate commerce was rational, and the means it used to achieve its goals were reasonable and appropriate. Therefore, the School Districts' Tenth Amendment claims fail.

As a final argument on this point, the School Districts claim that cases such as *New York v. United States,* 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) and *Printz, et al. v. United States,* --- U.S. ----, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997), somehow support their Tenth Amendment claim. This assertion is incorrect. Those cases involve an act of Congress which essentially hijacked the administrative apparatus of state and local government to help achieve Congress' ends. This case is not an example of such a Congressional overreach, so this argument fails as well.

The School Districts also claim that § 81*o*(e) violates the Guarantee Clause of the Constitution in that it deprives the states of a republican form of government. This claim is not only incorrect, it is absurd. First of all, the Supreme Court has held that challenges to Congressional action under the Guarantee Clause

8

are not justiciable. *See Baker v. Carr,* 369 U.S. 186, 224, 82 S.Ct. 691, 713, 7 L.Ed.2d 663 (1962); *O'Hair v. White,* 675 F.2d 680, 684 n. 5 (5th Cir.1982). Also, the School Districts do not explain the merits of their claim, silence which warrants rejection. Further, at least as of today, Texas is governed by a freely elected legislature and executive, not a monarchy, military dictatorship, or any other type of government which would offend the Guarantee Clause of the Constitution. Unless and until that fact changes, this claim is an absolute dead letter.

## Conclusion

Based on the foregoing, we find no reversible error in the decision of the district court, which granted summary judgment in favor of the Defendants-Appellees, and held that § 81o(e) is constitutional. Therefore, we AFFIRM the decision of the district court.

AFFIRMED.