No. 88-151

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

PACIFIC POWER & LIGHT COMPANY,
PUGET SOUND POWER & LIGHT COMPANY,
PORTLAND GENERAL ELECTRIC COMPANY,
WASHINGTON WATER POWER COMPANY,
AND THE MONTANA POWER COMPANY,

      Plaintiffs and Appellants,

  vs.

MONTANA DEPARTMENT OF REVENUE,
et al.,

      Defendants and Respondents.

---

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Henry Loble, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Donald R. Murray; Murphy, Robinson, et al., Kalispell, MT
        Thomas H. Nelson; Stoel, Rives, Boley, Jones & Grey,
        Portland, Oregon

    For Respondent:

        Larry Schuster, Montana Department of Revenue, Helena,
        Montana

Submitted: February 21, 1989

Decided: April 17, 1989

Filed:

---

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Appellants appeal the order of the First Judicial District Court, Lewis and Clark County, in a declaratory judgment action, upholding the validity of the Montana Department of Revenue's (DOR) assessment of beneficial use taxes for the year 1984 against the appellants pursuant to § 15-24-1203, MCA. These beneficial use taxes were assessed for the appellants' firm transmission demands upon certain Bonneville Power Administration (BPA), 500 kilovolt (KV) transmission lines located between Townsend, Montana and Garrison, Montana. We affirm the order of the District Court.

In the mid-1970s, two mine-mouth, coal-fired electric generating plants were built by Montana Power Company (MPC) and Puget Sound Power and Light Company (Puget), at Colstrip, Montana. Each of these plants produce 330 megawatts of electrical power consuming 30 megawatts internally at each plant. These plants have been operated and maintained by the Montana Power Company since being placed in service in 1975 and 1976.

To market the power produced by Colstrip Units I and II, two 230 KV electrical transmission lines were built to transmit the power from Colstrip to a point near Broadview, Montana. Other 230 KV lines moved the energy from Broadview to markets or "loads" located in western Montana and the Pacific Northwest. This system of 230 KV lines proved adequate for transmitting the energy generated from Colstrip Units I and II.

In the late 1970s and early 1980s, MPC and Puget, in conjunction with Portland General Electric Company (PGE), Washington Water Power Company (WWP) and Pacific Power and Light Company (PPL) foresaw an increased demand in the

2

Pacific Northwest for electrical power. Consequently, they decided to build Colstrip Units III and IV. (Colstrip Units III and IV each have a generation capacity of 770 megawatts (MW) of electrical power with each plant consuming approximately 70 MW internally.) These five companies, the appellants in this case, were the owners of undivided interests in Colstrip Units III and IV at the time of the assessment of the beneficial use taxes which are the subject of this litigation. They shall hereinafter be collectively referred to as the Owners.

Realizing that the existing system of 230 KV transmission lines would be insufficient to transmit the additional 1,400 MW produced by Colstrip Units III and IV in 1977, the Owners entered into negotiations with the BPA to build two 500 KV transmission lines from Townsend to the BPA's existing 500 KV lines at Taft, Montana.

The Owners would convert the existing 230 KV lines stretching from the Colstrip generating point to a substation located at Broadview, Montana, into 500 KV lines. They then would construct new 500 KV lines from Broadview, Montana to the anticipated BPA 500 KV lines beginning in Townsend.

For its part, the BPA executed two primary agreements with the Owners. These agreements stated the BPA would construct and operate those 500 KV lines referred to as the Montana Intertie line, which runs from Townsend, Montana to Garrison, Montana, and the Garrison West line, which runs from Garrison, Montana, to a point designated as the Taft substation on the Montana-Idaho border. These lines would link with the BPA's currently existing 500 KV system at the Taft substation.

In preparation for Colstrip Unit III going on-line in January, 1984, the BPA completed construction of the 500 KV lines from Townsend, Montana to Garrison, Montana, in 1983.

There is no substation at the point where the BPA and Owners' lines meet near Townsend. The BPA completed the Garrison West line in 1986. This facilitated the transmission of Colstrip Unit IV power to the Taft substation and points to the west.

In 1983, the Montana Legislature, realizing use of the proposed BPA 500 KV lines extending from Townsend to Taft would be exempt from state property taxes, passed an amendment to § 15-24-1203, MCA, to close the loophole which provided this tax windfall. The amendment provides for the assessment of a beneficial use tax against users of exempt electrical transmission lines having a 500 KV or greater rating. After passage of this amendment, the DOR began meeting with the Owners, their representatives and the BPA to determine a value for the Montana Intertie line which would be placed in service in 1984.

A definite value for the Montana Intertie line had not been established by early 1984. The DOR thus based its assessment on the average of the initial agreement's project value and estimates of the actual cost of constructing these lines. The resulting value for the Montana Intertie line was established at $92,000,000. The DOR then factored this value into the cost portion of the standard unitary method and assessed taxes to each owner based upon their firm transmission demands under the Montana Intertie Agreement. The Owners protested the imposition of these beneficial use taxes and this lawsuit resulted.

In 1985 and each subsequent year, the DOR has assessed beneficial use taxes against the Owners for their use of the 500 KV lines referred to in this opinion and in each case the Owners have protested and filed lawsuits seeking declaratory injunctive relief from the imposition of those taxes. The

4

individual facts of those cases are not dealt with in this opinion.

The Owners present seven separate issues in this appeal:

1. Whether the Owners' lacked that sufficient "Beneficial Use" of the subject facilities necessary for the imposition of beneficial use taxes under § 15-24-1203, MCA?

2. Whether the challenged taxes violate the Commerce Clause of the United States Constitution?

3. Whether the challenged taxes violate the Supremacy Clause of the United States Constitution?

4. Whether the challenged taxes violate the guarantee of due process and equal protection found in the Fourteenth Amendment?

5. Whether the challenged taxes violate the "Private Interests" clause of the Montana Constitution?

6. Whether the challenged taxes violate the "Retrospective Laws" clause of the Montana Constitution?

7. Whether the challenged taxes violate the "Impairment of Obligation of Contracts" clause of the Montana Constitution?

## BENEFICIAL USE

A state's right to impose beneficial use taxes on a private citizen or corporation's possession or use of property owned by the United States is well established. United States v. County of Fresno (1977), 429 U.S. 452, 462, 97 S.Ct. 699, 704, 50 L.Ed.2d 683, 692. However, these taxes must be imposed equally on others similarly situated. Id. at 462, 97 S.Ct. at 705, 50 L.Ed.2d at 692. The policy reason for allowing these taxes is to prevent the unfair trade advantage accruing to those private users of exempt

5

properties over their competitors who must pay ad valorem taxes on similar, privately held properties. Id. at 463, 97 S.Ct. at 705, 50 L.Ed.2d at 692-693.

The Owners maintain that the beneficial use taxes may not be imposed upon them as they do not have a beneficial interest in or receive a beneficial use from the 500 KV lines. They contend in order to impose beneficial use taxes the state must show that the Owners have possession of the exempt property and that this possession is exclusive, excluding other users of the lines and restricting physical access to the property. As evidence of their lack of possession or exclusive use, the Owners cite to the following facts. The maintenance and actual operation of the Townsend to Garrison 500 KV lines is controlled by the BPA. The BPA has reserved 185 MW of East to West transmission capacity unto itself and the Owners do not have access to the West to East transmission capacity over the Montana Intertie. Further, the testimony of experts at trial and in depositions established that it is impossible to identify the exact path that electrical power will follow when introduced into an integrated system such as exists between Colstrip and Garrison. In other words, one cannot identify whether the Owners' Colstrip power injected into the system at Colstrip flows over the 500 KV transmission lines or over other existing 230 KV transmission lines which interact with the 500 KV lines at the Broadview and Garrison substations.

We find, however, that the Owners do possess a sufficient beneficial use interest in the 500 KV lines, from Townsend to Garrison, which justifies the imposition of beneficial use taxes.

The United States Supreme Court has defined "beneficial use," in a case arising out of Missoula County, Montana, as follows:

6

The expression "beneficial use" or "beneficial ownership or interest" in property is quite frequent in the law, and means, in this connection such a right to its enjoyment as exists where the legal title is in one person and the right to such beneficial use or interest is in another, and where such right is recognized by law, and can be enforced by the courts, at the suit of such owner or of someone on his behalf.

Montana Catholic Missions v. Missoula County (1906), 200 U.S. 118, 127, 26 S.Ct. 197, 200, 50 L.Ed. 398, 402. See also Harrison v. City of Missoula (1965), 146 Mont. 420, 407 P.2d 703. Further the U.S. Court of Appeals for the Ninth Circuit has recognized a state may tax those contract rights granting such a beneficial use interest. International Paper Co. v. County of Siskiyou (9th Cir. 1974), 515 F.2d 285. In the International Paper Co. case the counties attempted to tax the companies' interest in standing timber located in national forests. Under the sale contracts, title to the timber remained with the Forest Service until it had been cut, scaled and paid for. The Ninth Circuit held that the timber property, from which the company derived profit, was not exempt from taxation merely because the United States retained legal title to it as security. Id. at 289, citing S.R.A., Inc. v. State of Minnesota (1946), 327 U.S. 558, 570, 66 S.Ct. 749, 756, 90 L.Ed. 851, 860.

In the present case, the Colstrip Owners have an enforceable contract interest which gives them the right to the beneficial use of firm (a guaranteed level of the available transmission capacity) megawatts of power transmitted over the Montana Intertie line. The Montana Intertie Agreement gave the Owners the right to inject electrical power into and remove electrical power from the lines up to specific maximum megawatts of power. This right

7

is subject only to the BPA's ability to transmit these amounts onward from the Garrison substation. We note the project scheduled power, (the amount of electric power each company schedules on an hour over the Montana Intertie up to the maximum allowed for each Company's East-West transmission demand) remained under the ownership of the Owners.

The Owners have exercised this right and used these lines to transmit power for their own commercial profit -making activities. Further, absent the transmission of any BPA or non-firm energy, the Owners are responsible for the total annual cost of the lines. The total annual cost of the transmission lines includes the cost of the government's investment in the Montana Intertie line and the Garrison substation, the annual cost of operating and maintaining the transmission line system, the BPA's administrative costs attributable to the lines and the cost to BPA of any impact-aid payments. The payment formula provides that the Owners receive a credit for BPA and non-firm transmission over the lines. The Owners are liable for these payments whether they use the lines or not. Under such an arrangement, we find the Owners clearly have a beneficial use interest in the Montana Intertie 500 KV lines.

The Owners contend, however, that even if a beneficial use existed, the interest was not exclusive, and thus it could not be taxed. The Owners assert they have no reservation of the remaining 185 MW of East to West transmission capacity nor to any of the West to East transmission capacity of the lines. Therefore, the imposition of beneficial use taxes resulted in the Owners being taxed on the full value of the property when they only had use of part of the lines. United States v. County of Allegheny (1944), 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209.

This argument is without merit as the Montana Intertie Agreement provided that the BPA could not exercise its East to West reservation until the Garrison West 500 KV lines were operational. Thus, the BPA had no right to exercise its reservation in 1984, the year in which the taxes in this case were imposed. Secondly, testimony at trial established that the BPA would only allow reservation of a firm transmission demand on the West to East capacity of the lines if a requesting party showed a demonstrated need for use of the lines. Until such a demonstrated need was shown, the only firm transmission users of the lines were the Owners, for whom the lines were constructed, and the BPA.

Testimony at trial established that the Montana Intertie line consisted of two bi-directional 500 KV electrical transmission lines. These bi-directional lines are capable of transmitting electrical power in either direction, however, they are not capable of transmitting power in both directions simultaneously. These lines are stability limited at approximately 2,000 MW, although a BPA employee testified that actual loading of the system at capacity would be lower. In negotiating the Montana Intertie, the Owners and BPA provided for maximum firm transmission demands, East to West, of 1,915 MW. Further, the Owners' intention has been to operate the Colstrip generating units as base loaded units. Base loaded generating units are intended to run at full capacity supplying constant power levels to the system.

We find the Montana Intertie 500 KV lines were built to transmit base load power from East to West. No other parties could use the lines because of the Owners' reservation of more than the amount which could be transmitted beyond the Garrison substation. Until other parties are able to exercise reservations in the lines' transmission capacity in

9

either direction, at which time the Owners will be credited, the Montana Intertie's total capacity was reserved exclusively to the Owners. Consequently, the State had the statutory right to tax the Owners based upon the full value of the facilities.

## COMMERCE CLAUSE

Having found the Owners possessed a taxable beneficial use interest in the exempt facility, we now address the Owners' claims that the imposition of these taxes violated certain sections of the United States and Montana Constitutions. The Owners' first claim is that the imposition of beneficial use taxes on their use of the Montana Intertie line violated the Commerce Clause of the United States Constitution. The Owners contend that the Legislature intended to discriminate against interstate commerce by giving preferential treatment to Montana REA cooperatives and that the DOR has implemented the beneficial use statute in a discriminatory manner.

It is well established that a state may raise revenues by taxing a private person or corporation's use of federal property within its jurisdiction, provided the state is taxing the possession or use of the property. United States v. County of Fresno (1977), 429 U.S. 452, 462, 97 S.Ct. 699, 704, 50 L.Ed.2d 683, 692. However, the fact that such a tax may have an impact on interstate commerce will subject the tax to commerce clause scrutiny. Commonwealth Edison Co. v. Montana (1981), 453 U.S. 609, 616, 101 S.Ct. 2946, 2952-2953, 69 L.Ed.2d 884, 893. A state may exact its fair share of the cost of state government from interstate commerce activities within the state, so long as the tax meets the test promulgated in Complete Auto Transit, Inc. v. Brady (1977), 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326.

<u>Commonwealth Edison</u>, 453 U.S. at 617, 101 S.Ct. at 2953, 69 L.Ed.2d at 894. The <u>Complete Auto Transit</u> test requires, upon examination of the practical effect of the tax, that the tax be applied to an activity having a substantial nexus with the taxing state, be fairly apportioned, not discriminate against interstate commerce, and be fairly related to the services provided by the taxing state. <u>Complete Auto Transit</u>, 430 U.S. at 279, 97 S.Ct. at 1079, 51 L.Ed.2d at 331.

Applying this test to the facts in this case the Owners' activities, subject to the tax, had a substantial nexus to the State of Montana. They had exclusive contract rights to use approximately 90 miles of BPA 500 KV transmission lines across Montana. These lines were constructed for the purpose of transmitting the Owners' electrical power generated at Colstrip, Montana to Garrison, Montana, and from there to the Owners' service loads. Further, as the Montana Intertie line is entirely within the state there is no potential for multiple state taxation of the use of the facilities. No other state would have jurisdiction to impose beneficial use taxes on these facilities. See, <u>Commonwealth Edison</u>, 453 U.S. at 617, 101 S.Ct. at 2953, 69 L.Ed.2d at 894.

Similar to the appellants in <u>Commonwealth Edison</u>, the Owners contend the tax assessed had a discriminatory effect on interstate commerce as the majority of the electrical power transmitted over these lines was destined for out-of-state consumers. These beneficial use taxes thus effectively exported the state's tax burden. However, as in <u>Commonwealth Edison</u>, the tax was computed at the same rate regardless of the destination of the power transmitted. MPC and Pacific used the power to service Montana customers and were assessed and taxed in the same manner as the other users

11

of the lines. The fact the Legislature realized the brunt of the tax would fall upon out-of-state users of these lines would not invalidate the tax.

As stated by the United States Supreme Court:

> [M]otives alone will seldom, if ever, invalidate a tax that apart from its motives would be recognized as lawful. (Citations omitted.) Least of all will they be permitted to accomplish that result when equity and not preference is the end to be achieved.

Henneford v. Silas Mason Co. (1937), 300 U.S. 577, 586, 57 S.Ct. 524, 528, 81 L.Ed. 814, 820.

The Owners also contend this amendment effectively discriminates against bulk transferors of power by benefiting local users of the federal transmission system and those utilities and cooperatives which use lower capacity transmission lines. In support of this contention the Owners point to the fact the amendment to the statute, § 15-24-1203, MCA, only applies to users of 500 KV and larger electrical transmission lines. However, state legislatures have a wide range of choice when they classify or limit items subject to taxation. Henneford, 300 U.S. at 587, 57 S.Ct. at 529, 81 L.Ed. at 821, citing Bell's Gap R. Co. v. Pennsylvania (1890), 134 U.S. 232, 237, 10 S.Ct. 533, 535, 33 L.Ed. 892, 895; Ohio Oil Co. v. Conway (1930), 281 U.S. 146, 159, 50 S.Ct. 310, 313, 74 L.Ed. 775, 781-782.

In the case at hand, the Legislature has identified a class of users of exempt property. This class consists solely of users of 500 KV and larger electrical transmission lines. These lines are used for the bulk transfer of electrical power. In this specific instance the Owners have contracted with the BPA to construct and operate 500 KV lines. As a result of the Owners' contract with the BPA, the Owners have the use of these lines which they otherwise would

12

have been forced to construct themselves. Absent the implementation of the beneficial use tax, the Owners would have received the use of the Montana Intertie transmission facilities, essential to the sale of Colstrip generated power, free of the taxes they would be subject to if they had constructed the lines themselves. We do not find the effect of the legislation was to unfairly tax out-of-state users of the lines, rather the effect is to prevent all users of such exempt lines from unfairly reaping a tax windfall.

The Owners point to cases where the United States Supreme Court and Federal courts have found that state taxes discriminate against interstate commerce in favor of local businesses or consumers. However, these cases are distinguishable. In Boston Stock Exchange v. State Tax Comm'n (1977), 429 U.S. 318, 97 S.Ct. 599, 50 L.Ed.2d 514, the Supreme Court found a transfer tax on out-of-state sales of stocks violated the commerce clause. The Court found that no state "may 'impose a tax which discriminates against interstate commerce . . . by providing a direct commercial advantage to local business.'" Boston Stock Exchange, 429 U.S. at 329, 97 S.Ct. at 607, 50 L.Ed.2d at 524, citing Northwestern States Portland Cement Co. v. Minnesota (1959), 358 U.S. 450, 458, 79 S.Ct. 357, 362, 3 L.Ed.2d 421, 427. In the case at hand, however, the beneficial use tax has been imposed upon both local and interstate users of the 500 KV lines for the purpose of eliminating a tax windfall and competitive advantage which enure to the users of tax exempt federal property. This tax imposes no greater tax liability on interstate users of these lines than on instate users. See Boston Stock Exchange, 429 U.S. at 332, 97 S.Ct. at 608, 50 L.Ed.2d at 526.

Recently in the case of United States v. City of Manassas, Va. (4th Cir. 1987), 830 F.2d 530, the Fourth

13

Circuit Court of Appeals dealt with a Virginia statute which taxed users of federally owned property, but exempted users of similar state owned property from taxation. There the court found the controlling case for discriminatory state use taxes is Phillips Chemical Co. v. Dumas School Dist. (1960), 361 U.S. 376, 80 S.Ct. 474, 4 L.Ed.2d 384. In Phillips, the Court held such taxes must be examined based on "how other taxpayers similarly situated are treated." requiring "'an examination of the whole tax structure of the state.' Cf. Tradesmens National Bank v. Oklahoma Tax Comm'n, 309 U.S. 560, 568." Phillips, 361 U.S. at 383, 80 S.Ct. at 479, 4 L.Ed.2d at 389. The Phillips Court provided a two-part test for evaluating allegedly discriminatory state use taxes:

> 1) Are the users of federal property treated less favorably than similarly situated users of state property; and
>
> 2) If so, is that discrimination justified in light of the state and federal interest involved.

City of Manassas, 830 F.2d at 534. The Fourth Circuit Court of Appeals in City of Manassas, interpreted the justification in part two of the test as requiring a determination of whether the user of federal exempt property is similarly situated to a user of state exempt property. City of Manassas, 830 F.2d at 534.

At trial the only references to imposition of beneficial use taxes on state exempt property dealt with two short line railroads and the Great Falls Industrial Park. The Bureau Chief for the Intercounty Property Bureau testified that in 1986 the DOR determined these railroads qualified for imposition of beneficial use taxes under § 15-24-1203, MCA. She testified that those taxes were appealed to the State Tax Appeal Board, but that at the time of the trial, January 19, 1987, the railroads were still

14

subject to beneficial use taxation. The Cascade County Assessor testified that the DOR had assessed beneficial use taxes on users of facilities at the Great Falls Industrial Park where the DOR found private parties' use met the requirements of § 15-24-1203, MCA. Neither party introduced any other beneficial use of similarly situated state exempt property, though several instances of beneficial use of other federal exempt properties were described. Based upon the above testimony we do not find the DOR discriminated against users of federal property in favor of similarly situated users of state exempt property.

Since the trial, the 1987 Legislature amended § 15-24-1203, MCA, to exempt the beneficial use of railroad right-of-way and track acquired by the state through abandonment, provided the state retains ownership and the right-of-way and track are used exclusively for rail transportation. This amendment was not considered by the District Court in its order of December 21, 1987, and we find it is not properly before this Court on appeal. Hanley v. Dept. of Revenue (1983), 207 Mont. 302, 673 P.2d 1257.

The fourth prong of the Complete Auto Transit test questions whether the tax is fairly related to the services provided by the taxing state. In Commonwealth Edison, the Court found the "operating incidence" of the tax was on the mining of coal in Montana. As the tax was measured as a proportion of the value of the coal taken, it was in proper proportion to the appellant's activities in the state. The present case involves an "operating incidence" similar to Commonwealth Edison which falls upon the Owners' beneficial use of exempt electrical transmission lines found within the state. This tax is measured as a percentage of the value of the property in which the Owners possess their beneficial use interest.

15

> Because it is measured as a percentage of the value of the coal taken, the Montana tax is in "proper proportion" to appellants' activities within the State and, therefore, to their "consequent enjoyment of the opportunities and protections which the State has afforded" in connection with those activities. (Citations omitted.) When a tax is assessed in proportion to a taxpayer's activities or presence in a State, the taxpayer is shouldering its fair share of supporting the State's provision of "police and fire protection, the benefit of a trained work force, and 'the advantages of a civilized society.'" (Citations omitted.)

Commonwealth Edison, 453 U.S. at 626-627, 101 S.Ct. at 2958, 69 L.Ed.2d at 900. As the appropriate level of that tax percentage is a legislative matter, we find the tax fairly reflects the taxpayer's activity in the state. Id. at 626-627, 101 S.Ct. at 2958-2959, 69 L.Ed.2d at 901.

## SUPREMACY CLAUSE

The Owners' second claim is that the imposition of beneficial use taxes violated the supremacy clause of the United States Constitution. The Owners correctly assert there are two means by which a state tax may be invalidated under the supremacy clause. The state statute may be preempted by federal action or the tax may improperly place the legal incidence of the tax upon the property of the federal government.

The Owners contend that two federal statutes do in fact preempt Montana's imposition of beneficial use taxes upon private use of federally owned electrical transmission lines. The first is Section 2121(a) of the Tax Reform Act of 1976, 15 U.S.C. § 391 (Anti-Discrimination Act) (1982). This statute provides:

16

> No State, or political subdivision thereof, may impose or assess a tax on or with respect to the generation or transmission of electricity which discriminates against out-of-State manufacturers, producers, wholesalers, retailers, or consumers of that electricity. For purposes of this section a tax is discriminatory if it results, either directly or indirectly, in a greater tax burden on electricity which is generated and transmitted in interstate commerce than on electricity which is generated and transmitted in intrastate commerce.

This statute has been examined in Arizona Public Service Co. v. Snead (1979), 441 U.S. 141, 99 S.Ct. 1629, 60 L.Ed.2d 106. There the Court examined New Mexico's tax on electrical generation and complimentary tax credit for electrical sales in New Mexico. The effect of this credit was to eliminate the 2 percent electrical generation tax for sales to New Mexico's electrical consumers, while taxing sales to out-of-state consumers. 15 U.S.C. § 391 (1982) was passed specifically to outlaw such taxes which place a greater tax burden upon electricity generated or transmitted in interstate commerce. The Court found that because the electrical energy tax indirectly discriminated against electricity sold outside the state, it violated the federal statute. Arizona Public Service Co., 441 U.S. at 150, 99 S.Ct. at 1634, 60 L.Ed.2d at 113. The federal statute does not prevent a state from taxing the generation and transmission of electricity, but only requires that interstate and intrastate generation and transmission be treated equally. Id. at 150-151, 99 S.Ct. at 1634, 60 L.Ed.2d at 114.

Initially, we note that no credit is provided under Montana's beneficial use tax to anyone affected by its imposition and none is alleged. Further, the beneficial use

tax on 500 KV electrical transmission lines applies equally to intrastate and interstate users of these lines. Testimony at trial established that Montana Power Company removed all of its power from the system at the Garrison substation for transmission to its load customers. MPC as an intrastate user is taxed at the same rate as the other users of the facilities. Also, this tax falls neither upon the generation nor the transmission of electrical power, but upon the use of tax exempt facilities. As such, this tax does not violate 15 U.S.C. § 391.

The Owners next contend 16 U.S.C. § 839(e)(m) preempts § 15-24-1203, MCA. This statute provides for the payment of impact-aid payments to offset the added cost to affected counties for the three construction phases of the Montana Intertie line. The three construction phases are pre-construction, which was complete before the Act was passed, construction, for which the three affected counties received over $150,000 in impact-aid payments, and post-construction. In the post-construction phase the counties may bill the BPA for any services provided as a result of the presence of the lines. The Owners' contention that these impact-aid payments were in lieu of taxes fails in light of testimony at trial. At trial, BPA's project information officer for the Colstrip transmission project testified that these impact-aid payments were not intended to be in lieu of taxes which the counties were losing as a result of federal ownership of the 500 KV lines. This statement is reinforced by U.S. Representative Dingell's statement contained in the environmental impact statement. 48 Fed. Reg. 55765. ("This is not a payment-in-lieu of taxes provision.")

The Owners also advance an implied preemption argument based upon a line of cases holding that preemption may be

18

inferred when a scheme of federal regulation leaves no room for state regulation, or when the regulation is so dominant as to "preclude enforcement of state laws on the same subject." Hillsborough County v. Automated Medical Laboratories (1985), 471 U.S. 707, 105 S.Ct. 2371, 85 L.Ed.2d 714. The argument fails, however, in light of our previous findings regarding statutory preemption. The impact-aid payments contained in 15 U.S.C. § 839(e)(m), do not preclude a state's right to levy taxes on a private party's beneficial use interest in exempt federal transmission facilities. Further, 15 U.S.C. § 391 only precludes the implementation of a state tax scheme which places a greater tax burden on generation or transmission of electricity placed in interstate commerce. As previously stated the Montana beneficial use tax is levied on the beneficial use of the facilities and is equally applied to interstate and intrastate users of the facilities.

The Owners' last supremacy clause argument is that the legal incidence of the beneficial use tax falls on the federal government. In order to find a state tax on use of such exempt properties unconstitutional under a legal incidence argument, the taxed entity must be "'so intimately connected with the exercise of a power or the performance of a duty' by the Government that taxation of it would be 'a direct interference with the function of government itself.'" United States v. New Mexico (1982), 455 U.S. 720, 736, 102 S.Ct. 1373, 1383, 71 L.Ed.2d 580, 593, citing James v. Dravo Contracting Co. (1937), 302 U.S. 134, 157, 58 S.Ct. 208, 219, 82 L.Ed. 155, 171. Where the legal incidence of the tax falls on a private party, and they are independent entities from the United States, the tax cannot be considered a tax on the government itself. U.S. v. New Mexico, 455 U.S. at 738, 102 S.Ct. at 1385, 71 L.Ed.2d at 594. In the New Mexico

19

case, the government sought to show that beneficial use taxes, based upon management contracts which transferred payment of any state taxes imposed to the federal government, placed the legal incidence of the tax on the federal government. The United States Supreme Court found that the fact the federal property involved was being used for the government's benefit was irrelevant. Id. at 739, 102 S.Ct. at 1385, 71 L.Ed.2d at 595. The Court found the contractors remained "distinct entities pursuing 'private ends,' and their actions remained 'commercial activities carried on for profit.'" Id. at 739-740, 102 S.Ct. at 1385, 71 L.Ed.2d at 595, citing United States v. Boyd (1964), 378 U.S. 39, 44, 84 S.Ct. 1518, 1521-1522, 12 L.Ed.2d 713, 718. Such a tax does not fall upon the federal government, but rather upon the contractor's independent commercial enterprise.

In the instant case the tax is levied directly upon the Owners for their beneficial use of the federal government's facilities. There is no transfer of the tax liability to the government. In fact, the Montana Intertie Agreement provides any costs the government incurs by way of the Owners' use of these transmission lines are billable annually to the Owners. The "legal incidence" of the beneficial use tax in this case clearly falls upon the Owners and not upon the federal government.

The Owners argue that the imposition of these taxes on the Owners' use of the Montana Intertie line would adversely affect the government's ability to secure adequate lease fees from these types of lines. This argument must fail for two reasons. First, the United States Supreme Court has upheld use taxes even where the government by contract agrees to pay the state use or excise tax. See, James v. Dravo Contracting Co. (1937), 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155. Second, in the contracts which grant the use in this case,

20

the Owners are obligated not only to pay the cost of operating and maintaining the lines each year, (less credits for BPA transmissions and non-firm transmissions), but the cost of constructing these lines as well. Under such an arrangement it is implausible that imposing these taxes upon the use of the exempt lines would adversely impact the government's ability to secure adequate lease values.

## FOURTEENTH AMENDMENT

The Owners contend the imposition of beneficial use taxes in this case violates the Due Process Clause and the Equal Protection Clause under the Fourteenth Amendment to the United States Constitution. The Owners contend that the Due Process Clause requires that the amount of the tax must bear some relation to the value of the property assessed against the taxpayer. Norfolk & Western Railway Co. v. Missouri State Tax Commission (1968), 390 U.S. 317, 88 S.Ct. 995, 19 L.Ed.2d 1201. The Owners allege that the defendant counties have conferred no benefit upon the Owners because of their use of the Townsend to Garrison facilities, that the defendant counties have already been fully compensated through the impact-aid portions of the Montana Intertie Agreement and that the taxes imposed are based on the full value of the facilities. Further, the Montana Intertie Agreement gives appellants rights which are far less than full ownership.

State tax statutes will not normally be set aside based upon Due Process Clause violations, except in rare and unusual circumstances. A. Magnano Co. v. Hamilton (1934), 292 U.S. 40, 54 S.Ct. 599, 78 L.Ed. 1109. Further, to attack the tax statute, the appellants must show a failure to satisfy two tests. First, the object of the tax must lack a nexus with the state imposing the tax, and second, the tax

21

must fail to fairly reflect the taxpayer's activity in the taxing state.

Sufficient nexus with the state has already been established under the Commerce Clause section previously discussed. Additionally, we previously found under the fourth prong of the Complete Auto Transit test, that the tax is fairly related to the services provided by the state. Thus, there is no violation of the Due Process Clause.

The Owners contend the Equal Protection Clause invalidates the beneficial use tax because the state has not equally administered the beneficial use taxes. Raymond v. Chicago Union Traction Co. (1907), 207 U.S. 20, 28 S.Ct. 7, 52 L.Ed. 78; and Larson v. State (1975), 166 Mont. 449, 534 P.2d 854. The Owners claim that the Department has never attempted to apply the beneficial use tax in analogous situations, specifically referring to the Montana Rural Electrification Administration Cooperatives (REAs).

These REAs, as preference customers, are entitled to purchase federal power at a preferred or "Priority Firm Rate." This rate is lower than the rate investor-owned utilities are entitled to when they purchase federal power. These REAs also have a right to first call on federal power, before investor-owned utilities. The Owners claim the beneficial use taxes would be applicable to BPA's preference customers based on their use of the BPA transmission system, including the BPA's 500 KV lines. The Owners also contend this is the first attempt to apply the beneficial use tax upon any entity that did not have "exclusive use" of the subject facilities. The Owners equate exclusive use to a requirement that they have possession of the facilities and transmission lines.

The standard which must be achieved to invalidate the tax on equal protection grounds is one of invidious

discrimination, as opposed to the existence of a rational relationship. Lehnhausen v. Lake Shore Auto Parts Co. (1973), 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351. The existence of a rational relationship is met here by the intent to close the loophole which would have allowed these companies to avoid paying any taxes. In regard to the Owners' claims regarding the REAs, we note they do not use the Montana Intertie line, nor possess firm transmission demands in 500 KV lines which may be taxed in 1984, under § 15-24-1203, MCA.

We agree with the DOR that the Legislature was not required to tax all beneficial users before it could reach the beneficial users of 500 KV lines. ("[T]axation of certain objects need not be universal in nature.") Citing to Louisiana v. Pilsbury (1881), 105 U.S. 278, 26 L.Ed. 109. The Legislature in this case has identified beneficial users of 500 KV lines as a distinct tax classification.

## THE MONTANA CONSTITUTION

Additionally, the Owners claim the imposition of beneficial use taxes in this case violates three provisions of the 1972 Montana Constitution. The Owners contend that while Art. VIII, sec. 5(1)(a) allows "private interests" in exempt properties to be taxed separately, such a tax necessarily requires the user to have possession. The Owners base this requirement of possession upon statements made at the Constitutional Convention that in closing an existing loophole the delegates provided for taxation of private interests in government-owned property, "things like right-of-ways and things like that . . . " Further, the Owners contend the Montana Supreme Court, in identifying an "interest" in real property as an estate, has implied one must have the right to possess and control property before

23

beneficial use taxes may be imposed. Brown v. Hart (1984), 213 Mont. 517, 692 P.2d 14.

We disagree. What is involved here is a private contractual right to use a portion of the transmission capacity of the exempt Townsend-Garrison line. This private interest in exempt federal lands fits within the plain language employed by the 1972 Constitutional Convention delegates in closing this loophole contained in the prior constitution.

> (1) The legislature may exempt from taxation:
>
> (a) Property of the United States, the state, counties, cities, towns, school districts, municipal corporations, and public libraries, but any private interest in such property may be taxed separately.
>
> . . .

Art. VIII, sec. 5(1)(a), 1972 Montana Constitution.

The Owners next claim that the imposition of beneficial use taxes on their use of the Montana Intertie line violates Art. XIII, sec. 1(3), prohibiting retrospective laws. Specifically the Owners contend that since the Montana Intertie Agreement was entered in 1981 and § 15-24-1203, MCA, was not amended to specifically include 500 KV transmission lines until 1983, the effect of imposing these taxes is precisely the type of retrospective action the 1972 Constitutional Convention was prohibiting.

We find several problems with the Owners' argument. First, the argument ignores the ongoing nature of their use of these lines. Second, this contention is weakened by Art. VIII, sec. 5(1)(a) which specifically allows for taxation of the interests conveyed to the Owners under the Montana Intertie Agreement. We agree with the District Court that

24

the position the Owners advance would have the effect of prohibiting all new forms of taxation. "The imposition of a new tax, or an increase in the rate of an old one, is simply one of the usual hazards of the business enterprise." Westfield-Palos v. City of Rancho Palos Verdes (Cal.App. 1977), 141 Cal.Rptr. 36, 42, citing John McShain, Inc. v. District of Columbia (D.C. Cir. 1953), 205 F.2d 882, 883.

> Only where the measuring formula for the tax draws upon such disparate or long past antecedents so as to have little relation to the volume of current business might a business license tax fall on retroactivity grounds. (Citations omitted.)

Westfield-Palos, 141 Cal.Rptr. at 42. We find that the beneficial use tax involved here, like the business license tax in Westfield-Palos applies to the ongoing, current business activity of the Owners. As such, the tax does not violate Art. XIII, sec. 1(3), of the 1972 Montana Constitution.

The Owners' final issue relies on Art. II, sec. 31, of the 1972 Montana Constitution in contending the imposition of these beneficial use taxes constitutes an impairment of their contract with the BPA. This argument is without merit as it has long been established that "[a] contract between individuals cannot have the effect of depriving the state or any municipal subdivision of any power of taxation otherwise belonging to it." Forbes v. Mid-Northern Oil Co. (1935), 100 Mont. 10, 22, 45 P.2d 673, 679, citing Newman v. Commercial Waterway District (Wash. 1923), 217 P. 9. As long as the state does not violate a fundamental right of the individual, the state is free to vary the existing mode of taxation. Forbes, 45 P.2d at 679. As Art. II, sec. 31 of the 1972 Montana Constitution is essentially identical to Art. 3, sec. 11 of the 1889 Montana Constitution, under which the Forbes

25

case was decided, we find the Owners have presented no reason to find there has been any impairment of their contract.

## CONCLUSION

The Owners enjoyed a beneficial use interest in the Montana Intertie Agreement 500 KV lines, which use we hold was properly taxable under § 15-24-1203, MCA. That use was evidenced by the Owners' contractual reservation of firm transmission demands in the lines and the fact the lines were constructed for the purpose of transmitting the Owners' electrical power generated at the Colstrip generating facilities. The State's levy of these beneficial use taxes did not violate the United States Commerce Clause, the United States Supremacy Clause, the Fourteenth Amendment to the United States Constitution, nor the cited sections of the Montana Constitution. Therefore we affirm the order of the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

26