No. 88-544

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

_____

EVELYN SMITH, f/k/a EVELYN LOONEY,

        Plaintiff and Appellant,

-vs-

ROBERT SCHWEIGERT,

        Defendant and Respondent.

_____

APPEAL FROM:  District Court of the Eleventh Judicial District,
              In and for the County of Flathead,
              The Honorable Michael Keedy, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Richard DeJana, Kalispell, Montana

    For Respondent:

        James C. Bartlett; Hash, O'Brien & Bartlett, Kalispell,
        Montana

_____

Submitted on Briefs:  Nov. 21, 1989

Decided: January 10, 1990

Filed:

_____

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Evelyn Smith (Evelyn) appeals from an order of the Eleventh Judicial District granting summary judgment to respondent, Robert Schweigert (Schweigert). We reverse and remand.

Schweigert raises numerous issues for review, including timeliness of the appeal, mootness and the validity of the contract for deed. These arguments are without merit; accordingly we decline to address them. Therefore the sole issue on appeal is:

Whether Schweigert is barred, through the doctrine of collateral estoppel, from reopening a previous judgment of the District Court which determined that a lending agreement evidenced by a warranty deed and contract for deed was an equitable mortgage.

Dan and Evelyn Looney, husband and wife, were the owners as joint tenants, of a certain piece of land. On May 1, 1981, Schweigert and Dan Looney entered into a Memorandum of Intent. The purpose of this memo was to evidence an intent on the part of Dan Looney and Schweigert to enter into a Contract for Deed covering the land. Apparently Schweigert had constructed a building on such property owned by Looneys, and as a result Looneys owed him money. The pertinent portions of the memorandum of intent are as follows:

WHEREAS, Buyer [Dan Looney] is presently the owner of certain real property located at 271 Riverside Drive, Kalispell, which is the location of Buyer's business known as "Anvil Welding", and Seller [Schweigert] has done certain construction upon said property for the benefit of Buyer; and

WHEREAS, Seller has invested certain money in said property for the benefit of Buyer, and the parties are interested in securing that interest for the benefit of Seller; and

WHEREAS, both parties are working diligently with the staff and officers of the First Northwestern National Bank of Kalispell, hereinafter referred to as "bank", in order to secure financing involving the property in question,

. . .

3. That this agreement is entered into by both parties freely and voluntarily, with the understanding that it is intended to facilitate the completion of the financing arrangement with the bank, and further, it is understood and agreed that this agreement may be specifically enforced by either party in the event of controversy.

In order to secure the debt, the Looneys conveyed the property by warranty deed to Schweigert. The Contract for Deed was entered into with Schweigert as seller and the Looneys as buyers. Upon payment of the money owed as per contract for deed Schweigert would convey the property back to the Looneys. In case of failure on the part of the Looneys to comply with the contract, a quitclaim deed was placed in escrow to be delivered to Schweigert upon such default and proper notice. The Contract for Deed was executed and signed by both husband and wife on May 6, 1981.

3

In 1982, the Looneys were divorced. The property settlement agreement divided the property into two parcels. According to the agreement, Evelyn retained the portion of property upon which the family home was situated and Dan Looney received the portion upon which his business was located. The agreement also provided that Dan would pay the contract for deed debt.

Dan Looney defaulted on his payments. Schweigert gave notice of default to the Looneys and exercised his rights under the contract, and obtained and recorded the quitclaim deed covering the property held in escrow with the County Clerk and Recorder on June 28, 1985. Dan Looney alone filed a lawsuit against Schweigert on July 8, 1985. In the lawsuit, he maintained that because the warranty deed and Contract for Deed were executed to secure a debt, an equitable mortgage resulted. Consequently, he asserted that Schweigert would have to foreclose on the property as a mortgage and as a result he, Looney, would be entitled to a one-year right of redemption. For reference, see § 71-1-107, MCA, which provides as follows:

> Transfers of interest. (1) Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act is to be deemed a mortgage, except when in the case of personal property it is accompanied by actual change of possession, in which case it is deemed a pledge.

4

(2) The fact that a transfer was made subject to defeasance on a condition may, for the purpose of showing such transfer to be a mortgage, be proved (except as against a subsequent purchaser or encumbrancer for value and without notice), though the fact does not appear by the terms of the instrument.

In order to expedite the matter, Schweigert moved for summary judgment consenting to Looney's equitable mortgage assertion and asked the court to have the sheriff sell the property and to grant Looney a one-year right of redemption from the sheriff's sale. The judgment was entered and the sale took place. Schweigert bid in full the amount of the debt or contract purchase price then due, and Looney did not redeem within the one-year time period. On March 31, 1988, a Sheriff's Deed was issued in favor of Schweigert.

In the meantime on May 13, 1986, Evelyn filed a document entitled "Notice of Failure to Foreclose" which stated that the Decree of Foreclosure had no effect on her rights to the real property, because she was not named as a party in the foreclosure action. According to her theory, the foreclosure action only affected her ex-husband's interest. Since her right had not been validly foreclosed, she was still entitled to her interest in the property. Based upon this theory, she filed a complaint against Schweigert, seeking partition of her interest in the land.

Schweigert answered the complaint and maintained that her interest had been extinguished when he exercised his

5

rights under the Contract for Deed. He asserted that when he foreclosed on Looney's interest, he treated it as a mortgage only to prevent delay and litigation. Therefore, that action had no effect upon Evelyn's interest, which had previously been extinguished. He counterclaimed and sought to have Evelyn removed from the property.

These facts and arguments were presented in motions for summary judgment to the trial court. The trial court found in favor of Schweigert and ordered Evelyn to vacate the property. This appeal followed.

Evelyn argues that Schweigert is barred from foreclosing on her interest in the property. She maintains that when Schweigert elected to foreclose as a mortgage and bid in the sheriff's sale the full amount due him, he conclusively adjudicated all his interests involved. Therefore he cannot extinguish her interest through the provisions of the contract for deed. She bases her argument upon the doctrine of collateral estoppel.

Collateral estoppel is a form of res judicata. Quite simply, the doctrine "precludes relitigation of issues actually litigated and determined in a prior suit." Lawlor v. National Screen Service (1955), 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed 1122. It differs from res judicata, in that res judicata bars the same parties from relitigating the same cause of action, while collateral estoppel bars the same

6

parties, or their privies, from relitigating issues which have been decided with respect to a different cause of action. Brault v. Smith (1984), 209 Mont. 21, 679 P.2d 236.

The doctrine has three elements:

1. The issue has been decided in a prior adjudication and is identical to the one presented.

2. A final judgment on the merits was issued.

3. The party against whom the plea is asserted was a party or privity to the party in the prior adjudication.

In Re the Marriage of Stout (1985), 216 Mont. 342, 701 P.2d 729.

Evelyn asserts, and we agree, that each of these elements are established by the facts now before us. In regard to the first element, we note that the controversy here is identical to that adjudicated in the lawsuit filed by Dan Looney against Schweigert. Dan Looney brought suit against Schweigert claiming that the contractual arrangement, as evidenced by the contract for deed, was actually an equitable mortgage. He, therefore, maintained that he was entitled to a one year period of redemption. Schweigert, for whatever reason, agreed with this assertion. He moved for summary judgment and sought to foreclose upon the property as a mortgage. The lower court granted this motion. In granting the motion the court formally adjudicated the controversy. Casad, Res Judicata § 4-10 (1976).

In the present case, Schweigert seeks to advance the same argument--that the arrangement is a valid contractual obligation and is not an equitable mortgage. This assertion, however, was previously adjudicated in the lawsuit with Dan Looney. Hence, the first element is satisfied.

The second element requires that the judgment be based upon the merits of the controversy. A valid and final personal judgment on the merits precludes a later suit on the same claim or cause of action. This preclusive effect is applicable to the elements asserted in the first suit as well as to all elements which could have been asserted. The policy behind this principle, often referred to as "bar," is to deter the splitting of a single cause of action into more than one lawsuit. Casad, Res Judicata § 4-1 (1976).

In order to decide whether a judgment is "on the merits" one must determine if it conclusively adjudicates the substantive validity of the claim. The claim now before us was determined through summary judgment in the previous suit. Summary judgment is only granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. Such a judgment is on the merits because it conclusively determines a legal issue which is presented by the facts of the case. Therefore, the granting of the motion will serve to bar a later suit on the same cause of action.

The final issue requires that the party against whom the plea is asserted was a party or privity to the party in the prior adjudication. In this case, as in the prior adjudication, Schweigert is the defendant. Thus the third element is satisfied and the determination in the prior lawsuit estops him from further argument on the issue of the existence of an equitable mortgage.

Each of the elements of collateral estoppel is satisfied. The lower court, however, refused to apply the doctrine to the facts of the case. It instead held that Evelyn was equitably estopped from contesting the validity of the foreclosure action. We disagree with the lower court's ruling. Evelyn was not a party nor is there any evidence to support any theory of estoppel against her. The fact that Evelyn was not a direct party precludes the action from having any binding effect upon her, and the judgment originally rendered is final. Moore v. Capital Gas Corp. (1945), 117 Mont. 148, 158 P.2d 302.

The principles upon which the Anglo-legal system is based require a finality to all judicial decisions. Parties should not be allowed to litigate the same matter over and over again. One fair day in court is enough. Mr. Schweigert was accorded his day in court and the matter was decided. Therefore, he cannot at this late date, contest that valid judgment. See generally Casad, Res Judicata (1976).

In light of these principles, Schweigert cannot now attempt to foreclose Evelyn's interest through the provisions of the contract for deed. He foreclosed upon the mortgage, his debt was merged into the judgment, and through the sheriff's sale the judgment and debt against the Looneys were satisfied. He and Evelyn are now cotenants in the subject property. The instant case arose through her complaint seeking partition. We must therefore remand this case to the District Court for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

10