No. 90-212

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

PACIFIC POWER & LIGHT COMPANY,
PORTLAND GENERAL ELECTRIC COMPANY,
WASHINGTON WATER POWER COMPANY,
PUGET SOUND POWER & LIGHT COMPANY,
and THE MONTANA POWER COMPANY,

   Plaintiffs and Appellants,

 -vs-

MONTANA DEPARTMENT OF REVENUE, et al.,

   Defendants and Respondents.



FILED

JAN 10 1991

CLERK OF ... COU...
S ... OF ... ANA

APPEAL FROM: District Court of the First Judicial District,
      In and for the County of Lewis and Clark,
      The Honorable Henry Loble, Judge presiding.

COUNSEL OF RECORD:

   For Appellants:

     Donald R. Murray, Jr.; Murphy, Robinson, Heckathorn
     & Phillips, P.C., Kalispell, Montana
     Thomas H. Nelson; Stoel, Rives, Boley, Jones & Grey,
     Portland, Oregon

   For Respondents:

     David W. Woodgerd, Chief Legal Counsel, Department
     of Revenue, Helena, Montana
     Paul Van Tricht, Tax Counsel, Department of Revenue,
     Helena, Montana
     Larry G. Schuster, Department of Revenue, Helena,
     Montana

          Submitted: December 6, 1990

           Decided: January 10, 1991

Filed:

         Clerk

Justice Diane G. Barz delivered the Opinion of the Court.

Appellants appeal an order of the First Judicial District Court, Lewis and Clark County, in a consolidated proceeding for declaratory and injunctive relief, upholding the validity of the Montana Department of Revenue's (DOR) assessment of beneficial use taxes against the appellants pursuant to § 15-24-1203, MCA. Appellants are challenging the beneficial use taxes for tax years 1985, 1986, and 1987, upon certain federally-owned 500 kilovolt (KV) transmission lines located between Townsend, Montana, and the Idaho border. The District Court granted DOR's motion for partial summary judgment on res judicata grounds and held that this Court's earlier decisions in Pacific Power and Light Company v. Montana Department of Revenue (1989), 237 Mont. 77, 773 P.2d 1176, and Portland General Electric Company v. Montana Department of Revenue (1989), 237 Mont. 324, 773 P.2d 1189, were dispositive of some of the issues before the District Court. On January 25, 1990, following trial on the remaining issues, the District Court entered an order denying the appellants' claims. The District Court held that the Colstrip Owners had not sustained the burden of proving that the assessment of the beneficial use taxes had violated any statutory or constitutional rights. We affirm.

The factual background leading up to this case has been previously set forth in Pacific Power and Light and Portland General Electric, therefore, we will discuss only the facts necessary to dispose of the relevant issues.

The appellants (Colstrip Owners) are five investor-owned

utilities which own undivided interests in coal-fired generating plants at Colstrip, Montana. The Colstrip Owners (Pacific Power & Light Company (PPL), Puget Sound Power & Light Company (Puget), Washington Water Power Company (WWP), Portland General Electric Company (PGE), and Montana Power Company (MPC)), have been assessed beneficial use taxes under § 15-24-1203, MCA, for tax years 1985, 1986, and 1987 with regard to the use of the 500 KV federally-owned transmission line between Townsend and Garrison, Montana, and for tax years 1986 and 1987 with regard to the 500 KV federally-owned transmission lines between Hot Springs, Montana and the Idaho border and between Garrison and the Idaho border.

The Colstrip Owners constructed Colstrip Units 3 and 4 in 1983 and 1985 respectively. Units 3 and 4 each generate 700 megawatts of electricity for transmission west. The energy from the Colstrip units is transmitted over the Colstrip Owners' two 500 KV transmission lines to its substation at Broadview, Montana, and from the Broadview substation over the Colstrip Owners' 500 KV lines to a point near Townsend, Montana. At Townsend, the 500 KV lines interconnect with the Bonneville Power Administration's (BPA) 500 KV transmission lines. BPA constructed a substation on the Hot Springs to Idaho border 500 KV line (referred to as the "Taft substation") and a Garrison to Taft 500 KV line, to accommodate the increased energy from Colstrip Units 3 and 4. Prior to the completion of the Garrison to Taft 500 KV line, there was no interconnecting 500 KV line west from the Garrison substation. The Garrison to Taft 500 KV line became operational in October, 1985, and was declared available for service in January, 1986. Colstrip

3

power first flowed from the Garrison substation across the Garrison to Taft line during October, 1985. At the Garrison substation, two 230 KV lines run north and interconnect with the Hot Springs substation. These 230 KV lines were known as the "bottleneck" and were the only means of transmitting power west from Garrison prior to BPA's construction of the Garrison to Taft 500 KV line.

The transmission of Colstrip energy from the Garrison substation west, is governed by a series of agreements referred to as the "Garrison West" agreements, entered into by each of the Colstrip Owners with BPA. The transmission demands of each Colstrip Owner as set forth in their respective Garrison-West agreements served as the basis for DOR's allocation of the beneficial use tax. The total cost of the BPA transmission facilities were allocated to the Colstrip Owners as a ratio of each Colstrip Owners' transmission demand over the total capacity of the lines. This allocated cost was then multiplied by 50% and added to each Owner's respective allocated Montana value. All the Colstrip Owners were assessed the beneficial use tax on this basis for use of the Townsend to Garrison segment in tax years 1985, 1986, and 1987. Four of the Colstrip Owners (MPC was not assessed beneficial use taxes for the facilities west of the Garrison substation) were assessed the tax on this basis for the use of the Garrison to Taft substation segment of the transmission line system for tax years 1986 and 1987, and for the use of the Taft to Idaho border segment for tax years 1986 and 1987. PPL was also assessed the tax on this basis for its use of the Hot Springs to Taft transmission line system for tax years 1986 and 1987.

4

Appellants raise six issues on appeal:

1. Whether the District Court erred by assuming jurisdiction to decide the legality of the tax assessments prior to a final determination by the State Tax Appeals Board (STAB).

2. Whether the assessment of beneficial use taxes pursuant to § 15-24-1203, MCA, violates the Supremacy Clause of the United States Constitution by discriminating against the United States or the Colstrip Owners.

3. Whether the Colstrip Owners' previous constitutional claims are barred by the doctrine of collateral estoppel.

4. Whether the taxes assessed for tax year 1986 on the Garrison-Taft 500 KV line were unlawful or illegal.

5. Whether DOR's methodology erroneously assumes that all power transmitted west of Garrison passes over the 500 KV federal lines and thereby discriminates against interstate commerce by imposing disproportionate taxes.

6. Whether DOR's new assessment methodology (50% weighting) is unconstitutional.

The Colstrip Owners contend that the lower court could not properly evaluate the constitutional questions before it, until after STAB had made a final determination concerning the methodology and amount of the assessments. It is the Colstrip Owners' position that the taxes imposed are excessive and discriminatory and, therefore, since questions of discrimination are often questions of degree, the underlying considerations necessary to properly determine the constitutional issues were not yet decided. We disagree.

5

This Court has previously held that questions of "constitutional and statutory correctness" are properly decided by the courts. Larson v. State (1975), 166 Mont. 449, 457, 534 P.2d 854, 858. The question of whether the tax itself is unconstitutional bears upon the statutory language of the tax. On the other hand, the question of whether the tax is unconstitutional as applied pertains to the circumstances under which the tax is imposed. The interpretation of either the statutory language or the circumstances surrounding imposition of a tax is not necessarily associated with the amount of that tax. If we determine that a tax is unconstitutional, either on its face or as applied, such determination can certainly be made independent and apart from any analysis of whether the tax is excessive. Therefore the constitutional issues presented by this appeal do not hinge upon the determinations STAB makes concerning the methodology and amount of the assessments.

The second issue raised by appellants is whether the 1987 amendment to § 15-24-1203, MCA, violates the Supremacy Clause of the United States Constitution, Article VI, § 2, as construed by the U.S. Supreme Court in United States v. City of Manassas (4th Cir. 1987), 830 F.2d 530, affirmed (1988), 485 U.S. 1017, 108 S.Ct. 1568, 99 L.Ed.2d 884. The Colstrip Owners argue that because the 1987 amendment results in exempting from beneficial use taxes State-owned property used for railroad transportation, it thereby violates the rule in City of Manassas. The Fourth Circuit stated in City of Manassas that it is unconstitutional for States to tax users of federal property when similarly situated users of State

6

property are exempt from taxation. <u>City of Manassas</u>, 830 F.2d at 534. The test to determine whether a State tax is unconstitutionally discriminatory was first set out by the United States Supreme Court in Phillips Chemical Co. v. Dumas School District (1960), 361 U.S. 376, 80 S.Ct. 474, 4 L.Ed.2d 384. The Court held that where those dealing with federal property are subject to greater use taxation than those dealing with State property, the statutory distinction "must be justified by significant differences between the two classes." <u>Phillips Chemical Co.</u>, 361 U.S. at 383, 80 S.Ct. at 479, 4 L.Ed.2d at 389. It is true that the 1987 amendment to § 15-24-1203, MCA, exempts users of State-owned rail lines from beneficial use taxes. However, after a thorough examination of the legislative history supporting this amendment, it becomes evident that there are "significant differences" between the railroads and the utilities (Colstrip Owners).

Chapter 591, 1987 Laws of Montana, was intended to exempt from beneficial use taxation two proposed tourist railroads which were to be run by non-profit corporations. See Senate Comm. on Business and Industry, Minutes on S.B. 272, 50th Leg., 4-5 (Feb. 18, 1987).

The State-owned railroad line in question had been acquired by the State as "abandoned" property under § 60-11-111, MCA, and consisted of a combined distance of thirty miles of track. The two non-profit railroads were designed to promote tourism in the form of an added attraction to parts of historic Montana.

The railroads' situation is much different than that of the Colstrip Owners. The Colstrip Owners' primary business purpose is to make a profit. The use of the federally-owned transmission

lines provide the Colstrip Owners the potential to significantly increase revenues. The United States Supreme Court in City of Detroit v. Murray Corp. (1958), 355 U.S. 489, 78 S.Ct. 458, 2 L.Ed.2d 441, held it proper for a State to tax government property, used by a private party, in the course of the party's own business. This is precisely what is being done in this case. The Colstrip Owners are being taxed for their use of federal property. This Court has already determined that "beneficial use" does not necessarily require "physical possession, exclusive use or control of the facilities." See Portland General Electric Co., at 329, 773 P.2d at 1192. Therefore, we hold that § 15-24-1203, MCA, and the 1987 amendment does not discriminate against the United States or the Colstrip Owners.

The third issue is whether the Colstrip Owners' previous constitutional claims raised in Pacific Power and Light, 237 Mont. 77, 773 P.2d 1176, and Portland General Electric, 237 Mont. 324, 773 P.2d 1189, are barred by the doctrine of collateral estoppel. As we recently stated in Smith v. Schweigert (1990), 241 Mont. 54, 785 P.2d 195, collateral estoppel is a form of res judicata, and whereas res judicata bars the same parties from relitigating the same cause of action, collateral estoppel bars the same parties from relitigating identical issues that have already been decided in a different cause of action. There are three elements that must be satisfied in order for collateral estoppel to apply. First, the issue must be identical to an issue that has been decided in a prior adjudication. Second, a final judgment on the merits must have been made in the prior adjudication. Third, the party against

8

whom the plea is made must have been a party, or have privity to the party, in the prior adjudication. Smith at 58, 785 P.2d at 197. In applying each element in turn to the facts of this case it becomes clear that collateral estoppel should be applied. The Colstrip Owners do not dispute the fact that the previous constitutional claims raised in Pacific Power and Light, 237 Mont. 77, 773 P.2d 1176, for the 1984 tax year, and Portland General Electric, 237 Mont. 324, 773 P.2d 1189, for the 1985 tax year, are again being asserted in this litigation. The appellants now assert the identical claims for the 1985, 1986 and 1987 tax years. The fact that different tax years are being challenged makes no difference. The constitutional challenges remain the same, and it is the substance of these challenges that have failed. The year in which they were brought has no bearing upon their lack of success. Allowing the Colstrip Owners to raise the same challenges to the same tax each subsequent tax year serves no purpose. If such were the case, each new year would provide a clean slate for any and all previous claims to be readjudicated. The challenges are identical to the issues raised in the previous cases before this Court and thus satisfy the first element.

Likewise, this Court issued a final judgment with respect to those claims in Pacific Power and Light, 237 Mont. 77, 773 P.2d 1176, and Portland General Electric, 237 Mont. 324, 773 P.2d 1189, thereby satisfying the second element. That judgment was made after oral argument and at a time much closer to our thorough consideration of the issues. Reconsideration of those issues as the Colstrip Owners would have us do, at a much later time such as

9

now, would not be correct.

The third element is also satisfied. In both the prior cases and the case at bar, DOR is the party against whom these issues were raised. In fact, all parties in this lawsuit have been parties in the prior adjudication. Consequently, the Colstrip Owners' previous constitutional claims have been adjudicated and are barred by collateral estoppel from being raised a second time.

The fourth issue is whether the taxes assessed for tax year 1986 on the Garrison to Taft 500 KV line were unlawful or illegal. This issue will be discussed concurrently with the fifth issue, whether DOR's methodology erroneously assumes that all power transmitted west of Garrison passes over the 500 KV federal lines. Section 15-1-406, MCA, was enacted by the legislature in 1981 to provide an aggrieved taxpayer with an alternative means of challenging the imposition of a tax. Likewise, § 15-2-307, MCA, was enacted to provide an aggrieved taxpayer an alternative means of challenging the method or procedure of assessment. Under both sections a taxpayer may proceed directly to district court in the form of a declaratory judgment action. However, if a challenge is initially brought under Title 15, Chapter 2 of the MCA, pursuant to § 15-1-402, MCA, a taxpayer is required to exhaust the available administrative remedies before proceeding to the courts. See § 15-1-402(2), MCA. The Colstrip Owners chose to bring issues four and five before STAB in accordance with Title 15, Chapter 8, MCA, and Title 15, Chapter 2, MCA, respectively. Had the issues been raised directly to district court in the form of a declaratory judgment action, they would properly be before this Court. But because

10

these issues were initially brought before STAB, they must be first dealt with at that level. Any decision STAB makes may be appealed through district court to this Court.

The final issue deals with a revision of assessment methodology. As the District Court stated in its denial of the Colstrip Owners' Motion for Leave to File First Amended Complaints, under § 15-8-601(3)(c), MCA, challenges to revisions in assessments must be made by appeal to STAB. The District Court correctly refused to hear this issue and, therefore, we will not hear it either. Once the issue has been brought before STAB a proper judicial review will then be available to the appellants.

The decision of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

11