## ARIZONA v. NEW MEXICO

No. 70, Orig. Decided May 24, 1976

Per Curiam.

The State of Arizona, as a consumer, and its citizens, as consumers, purchase substantial amounts of electrical energy generated in New Mexico by three Arizona utilities operating generating facilities there. Two of the utilities are investor-owned public service corporations; the third, Salt River Project Agricultural Improvement and Power District, operates a federal reclamation project and is a political subdivision of Arizona. The utilities retail their electrical energy through interstate lines only to consumers in Arizona and, for that reason, incur no liability to New Mexico for its gross receipts tax which is incurred at the point of retail sale.[1]

In 1975 New Mexico passed the Electrical Energy Tax Act[2] which imposes a tax on the generation of electricity at the rate of 4/10 of one mill per net kilowatt hour generated. The tax is nondiscriminatory on its face:

[1] See N. M. Stat. Ann. § 72–16A–4 (Supp. 1975).

[2] N. M. Stat. Ann. § 72–34–1 et seq. (Supp. 1975).

it taxes all generation regardless of what is done with the electricity after generation. However, the 1975 Act provides a credit against gross receipts tax liability in the amount of the electrical energy tax paid for electricity consumed in New Mexico. The relevant section of the Act reads:

> "On electricity generated inside this state and consumed in this state which was subject to the electrical energy tax, the amount of such tax paid may be credited against the gross receipts tax due this state." [3]

The State of New Mexico concedes[4] that the Arizona utilities will not be able to take advantage of the credit because their sales of electrical energy are outside the State and that, as to them, the practical effect of New Mexico's statutory scheme is to impose a tax no greater than 4% on the generation of electricity within New Mexico.

Seeking to invoke our original jurisdiction under Art. III, § 2, cls. 1 and 2, of the Constitution and 28 U. S. C. § 1251 (a)(1), the State of Arizona has filed a motion for leave to file a bill of complaint in which it asks for declaratory relief that the New Mexico electrical energy tax constitutes an unconstitutional discrimination against and burden upon interstate commerce, denies Arizona citizens due process and equal protection of the laws in violation of the Fourteenth Amendment to the Constitution, and abridges the privileges and immunities guaranteed them by Art. IV, § 2, of the Constitution. The complaint also asks that we enjoin the State of New Mexico from assessing, levying, or collecting the tax imposed by the 1975 Act.

---

[3] N. M. Stat. Ann. § 72–16A–16.1B (Supp. 1975).
[4] Brief in Opposition 3.

The State of Arizona purports to bring this suit in its proprietary capacity as a consumer of large quantities of electrical energy generated in New Mexico and as *parens patriae* for its citizens who consume and pay for electrical energy generated in New Mexico. Arizona urges that the economic incidence and burden of the electrical energy tax falls upon it and its citizens. It argues that the tax discriminates, and was intended to discriminate, against the citizens of Arizona, by placing upon them the burdens of the tax, a burden not borne by the citizens of New Mexico by reason of the credit provisions of the Act. Arizona claims to have no forum other than this Court in which to assert these claims.

The State of New Mexico represents that the three Arizona utilities involved in this suit chose not to pay the New Mexico tax which was due September 15, 1975, but, instead, joined in seeking a declaratory judgment by an action filed in the District Court for Santa Fe County, N. M.[5] That action raises the same constitutional issues as would be presented by the bill of complaint which the State of Arizona now seeks to file in this Court.[6]

We recently reaffirmed that "our original jurisdiction should be invoked sparingly" in *Illinois* v. *City of Milwaukee,* 406 U. S. 91, 93–94 (1972), where we additionally stated:

> "We construe 28 U. S. C. § 1251 (a)(1), as we do Art. III, § 2, cl. 2, to honor our original jurisdiction but to make it obligatory only in appropriate cases. And the question of what is appropriate concerns, of course, the seriousness and dignity of the claim; yet beyond that it necessarily involves the

---

[5] *Id.,* at 5–6.

[6] See App. to Brief in Opposition.

availability of another forum where there is jurisdiction over the named parties, where the issues tendered may be litigated, and where appropriate relief may be had. We incline to a sparing use of our original jurisdiction so that our increasing duties with the appellate docket will not suffer."

And, nearly 40 years ago in *Massachusetts* v. *Missouri*, 308 U. S. 1, 18–19 (1939), the Court said:

"In the exercise of our original jurisdiction so as truly to fulfill the constitutional purpose we not only must look to the nature of the interest of the complaining State—the essential quality of the right asserted—but we must also inquire whether recourse to that jurisdiction . . . is necessary for the State's protection. . . . We have observed that the broad statement that a court having jurisdiction must exercise it . . . is not universally true but has been qualified in certain cases where the federal courts may, in their discretion, properly withhold the exercise of the jurisdiction conferred upon them where there is no want of another suitable forum."

See also *Washington* v. *General Motors Corp.*, 406 U. S. 109, 113–114 (1972).

In the circumstances of this case, we are persuaded that the pending state-court action provides an appropriate forum in which the *issues* tendered here may be litigated. If on appeal the New Mexico Supreme Court should hold the electrical energy tax unconstitutional, Arizona will have been vindicated. If, on the other hand, the tax is held to be constitutional, the issues raised now may be brought to this Court by way of direct appeal under 28 U. S. C. § 1257 (2).

In denying the State of Arizona leave to file, we are

not unmindful that the legal incidence of the electrical energy tax is upon the utilities. We also are not unmindful of Mr. Justice Harlan's cautionary advice in *Ohio* v. *Wyandotte Chemicals Corp.*, 401 U. S. 493, 497 (1971):

> "As our social system has grown more complex, the States have increasingly become enmeshed in a multitude of disputes with persons living outside their borders. Consider, for example, the frequency with which States and nonresidents clash over the application of state laws concerning taxes, motor vehicles, decedents' estates, business torts, government contracts, and so forth. It would, indeed, be anomalous were this Court to be held out as a potential principal forum for settling such controversies."

The motion for leave to file a bill of complaint is denied.

*So ordered.*

MR. JUSTICE STEVENS, concurring.

Unless the New Mexico electrical energy tax has some impact on the rates paid by consumers of electricity in Arizona, I do not believe those consumers have standing to challenge that tax. Arizona has failed to allege such impact. Accordingly, apart from its possible privity with the Salt River Project Agricultural Improvement and Power District, in my judgment the State of Arizona is not sufficiently affected by the New Mexico tax to justify its invocation of the "original and exclusive jurisdiction" of this Court conferred by 28 U. S. C. § 1251 (a)(1). Since the Salt River Project is able to litigate in another forum, I concur in the Court's disposition of the motion. However, except to the extent that they apply to Arizona's attempt to litigate on behalf of an

entity which has access to another forum, I do not believe the comments which the Court has previously made about its nonexclusive original jurisdiction adequately support an order denying a State leave to file a complaint against another State.*

---

*In this connection it should be noted that the statement quoted from *Massachusetts* v. *Missouri,* 308 U. S. 1, 18–19, referred to the complainant's alternative contention that jurisdiction might be sustained on the theory that a controversy between Massachusetts and the citizens of another State was presented. Under that theory this Court's jurisdiction would not have been exclusive. See 28 U. S. C. § 1251 (b) (3).