# SUPREME COURT OF THE UNITED STATES

## TEXAS *v.* CALIFORNIA

### ON MOTION FOR LEAVE TO FILE A BILL OF COMPLAINT

No. 153, Orig.   Decided April 26, 2021

The motion for leave to file a bill of complaint is denied.

JUSTICE ALITO, with whom JUSTICE THOMAS joins, dissenting from denial of motion for leave to file complaint.

Suppose the following occurred. A Texan and a Californian are involved in a traffic accident in California. The Texan tries to sue the Californian in federal district court and invokes the "diversity" jurisdiction conferred by 28 U. S. C. §1332(a)(1), which provides that "[t]he district courts shall have original jurisdiction of all civil actions . . . between . . . citizens of different States" where the amount in controversy exceeds $75,000. Suppose the district court refuses to allow the filing of the complaint and explains: "I know that the Constitution and a federal statute give me jurisdiction over diversity cases, and I know that the Framers of the Constitution and the Congress that enacted the statute thought that diversity jurisdiction was important because it provides a neutral forum for out-of-state parties. But in my opinion, that's not really so important anymore, and if I have to handle diversity suits, I won't have the time I need to deal with more important matters. Therefore, in the exercise of my discretion, I am ordering that the complaint not be accepted for filing." Suppose a court of appeals affirmed this decision and the case came before us. What would we do?

We would reverse in the blink of an eye. We might also wag a finger at the lower courts and remind them that a federal court's obligation to hear and decide cases within its jurisdiction is "virtually unflagging." *Colorado River Water Conservation Dist.* v. *United States,* 424 U. S. 800, 817

(1976); see also, *e.g., Lexmark Int'l, Inc.* v. *Static Control Components, Inc.*, 572 U. S. 118, 126 (2014); *Sprint Communications, Inc.* v. *Jacobs*, 571 U. S. 69, 77 (2013). We might emphasize that federal courts do not have freewheeling discretion to spurn categories of cases that they don't like.

If this is how we would respond to this imaginary Texan versus Californian tort suit, how can we refuse to allow the filing of the complaint in this case? The State of Texas wishes to sue the State of California and invokes our "original and exclusive jurisdiction of all controversies between two or more States." 28 U. S. C. §1251(a); see also U. S. Const., Art. III, §2, cl. 2. Can we justify our refusal to entertain Texas's suit on essentially the same ground that we would reject out of hand in the hypothetical diversity case just described, that is, on the ground that our original jurisdiction no longer seems as important as it was when the Constitution was adopted, and that a proliferation of original cases would crowd out more important matters on our appellate docket? See *Illinois* v. *Milwaukee*, 406 U. S. 91, 93–94 (1972); *Ohio* v. *Wyandotte Chemicals Corp.*, 401 U. S. 493, 497–499 (1971). It is not easy to see how the refusal to entertain Texas's suit can be justified on that ground—particularly since our rejection of Texas's complaint leaves the State in a more difficult position than our imaginary Texas motorist. That person could at least file suit in a state court, but if our jurisdiction under §1251(a) is truly exclusive, the State is left without *any* judicial forum. Cf. *Franchise Tax Bd. of Cal.* v. *Hyatt*, 587 U. S. ___, ___ (2019) (slip op., at 13) (noting "inability of one State to hale another into its courts without the latter's consent").

In fairness to the Court, what it does in this case—claiming the discretion to refuse to entertain Texas's suit—is consistent with a practice the Court has followed for the past 45 years. But in all that time, the Court has never provided

a convincing justification for the practice. In *Cohens* v. *Virginia*, 6 Wheat. 264 (1821), Chief Justice Marshall's opinion for the Court famously proclaimed: "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution." *Id.,* at 404.

The Court has stepped back a bit from this categorical pronouncement—but only a bit. See, *e.g.*, *Sprint Communications, Inc.*, 571 U. S., at 77. The Court has repeatedly stressed that a federal court is *almost always* obligated to entertain a case over which it has jurisdiction. *Ibid.* Instances in which this is not required are the rare exception.

The Court's practice regarding original jurisdiction cases, however, has expanded far beyond anything that might be called an exception. Indeed, commentators have written that the practice has made our original jurisdiction "'almost as discretionary as [our] certiorari jurisdiction over appellate cases.'" S. Shapiro, K. Geller, T. Bishop, E. Hartnett, & D. Himmelfarb, Supreme Court Practice 639 (10th ed. 2013) (hereinafter Stern & Gressman).

## I

How did the Court come to adopt a practice that seems so inconsistent with the principle the *Cohens* Court thought self-evident? Like many a questionable habit, the practice developed incrementally. For the first 150 years after the adoption of the Constitution, the Court never refused to permit the filing of a complaint in a case falling within its original jurisdiction.[1] See Stern & Gressman 634; Stevenson, Exclusive Original Jurisdiction of the United States

---

[1] The Court did not accept every case filed during that period, of course—it rejected some for lack of standing and on account of other justiciability defects. See, *e.g., Louisiana* v. *Texas*, 176 U. S. 1, 24 (1900) (Harlan, J., concurring in result) (arguing Article III did not bestow jurisdiction over cases testing the constitutionality of "local statutes or regulations that do not affect the property or the powers of the complaining State in its sovereign or corporate capacity"); see generally Stern &

Supreme Court: Does it Still Exist? 1982 B. Y. U. L. Rev.
727, 729. The first whisper of the notion that the Court
might decline to exercise its original jurisdiction appeared
in *Louisiana* v. *Texas*, 176 U. S. 1 (1900). There, the Court
held that the case did not actually constitute a dispute be-
tween two States, but it added that the Court's jurisdiction
to hear such suits "is of so delicate and grave a character
that it was not contemplated that it would be exercised save
when the necessity was absolute." *Id*., at 15.

Another 39 years would go by before the Court took the
next step toward its current practice, and when it took that
step, it did so in a roundabout way. In *Massachusetts* v.
*Missouri*, 308 U. S. 1 (1939), the dispute concerned the two
States' right to impose state inheritance taxes on securities
held in trusts that had been created by a Massachusetts de-
cedent but were administered in Missouri by Missouri trus-
tees. Noting that there were ample funds in the trusts to
pay the taxes imposed by both States, the Court first held
the dispute was not really between two States and that
therefore the controversy did not fall within the Court's ex-
clusive original jurisdiction. *Id.,* at 15–17. The Court then
turned to Massachusetts's fallback argument that its claim
could be understood as one against Missouri citizens and
that therefore the claim at least fell within the Court's non-
exclusive original jurisdiction over cases between a State
and a citizen of another State. The Court expressed doubt
that the bill could be read to assert such a claim and only
then turned to the question whether the Court would be ob-
ligated to entertain the claim if the bill could be interpreted
that way. The Court observed that a court is not always
required to entertain a suit within its jurisdiction when the
suit may be brought in another forum; that the suit at hand
was not necessary for Massachusetts's "protection" because
Massachusetts could apparently bring its suit in a Missouri

––––––––––
Gressman 622–634.

court; and that entertaining suits like this one would potentially impose an "enormous burden" and "might seriously interfere with the discharge by th[e] Court of its duty in deciding cases and controversies appropriately brought before it." *Id.,* at 18–19.

In *Wyandotte Chemicals Corp.*, 401 U. S. 493, the Court returned to the question of declining to exercise its non-exclusive original jurisdiction. The Court acknowledged that "it may initially have been contemplated that this Court would always exercise its original jurisdiction when properly called upon to do so." *Id.*, at 497. But the Court opined that changes in the American legal system had rendered that view "untenable, as a practical matter." *Ibid.* "What gives rise to the necessity for recognizing [the] discretion" to decline to entertain original-jurisdiction cases, the Court explained, was "pre-eminently the diminished societal concern in our function as a court of original jurisdiction and the enhanced importance of our role as the final federal appellate court." *Id.*, at 499.

The next year, the Court said in dicta that it would exercise the same discretion in cases within its exclusive original jurisdiction: "We construe 28 U. S. C. §1251(a)(1), as we do Art. III, §2, cl. 2, to honor our original jurisdiction but to make it obligatory only in appropriate cases." *Illinois* v. *Milwaukee*, 406 U. S., at 93. The Court provided little justification for this assertion. In the next sentence, the Court noted that an important factor in determining whether a case is "appropriate" is "the availability of another forum where there is jurisdiction over the named parties," *ibid.*, but it is hard to see how this factor has a bearing on the refusal to exercise exclusive jurisdiction. And in the final sentence devoted to the subject, the Court gave this explanation: "We incline to a sparing use of our original jurisdiction so that our increasing duties with the appellate docket will not suffer." *Id.,* at 93–94.

The dicta in *Illinois* v. *Milwaukee* became a holding in

*Arizona* v. *New Mexico*, 425 U. S. 794 (1976) (*per curiam*),
where, for the first time, the Court declined to exercise its
exclusive jurisdiction in a controversy between two States.
See *id.*, at 796–797. While the state parties could not liti-
gate in any other federal court, the Court justified its deci-
sion by observing that the "*issues* tendered" were already
being litigated in a pending state-court action. *Id.*, at 797.

   Since that time, the Court has repeatedly declined to ex-
ercise its exclusive original jurisdiction in state-versus-
state cases, relying on the rationales provided in these ear-
lier decisions. See, *e.g., Wyoming* v. *Oklahoma*, 502 U. S.
437 (1992); *Louisiana* v. *Mississippi*, 488 U. S. 990 (1988);
*Texas* v. *New Mexico*, 462 U. S. 554 (1983); *California* v.
*Texas*, 457 U. S. 164 (1982) (*per curiam*). Justices have
written separately to question whether we really have dis-
cretion to decline to hear such cases. See *Arizona*, 425
U. S., at 798–799 (Stevens, J., concurring); *California* v.
*West Virginia*, 454 U. S. 1027 (1981) (Stevens, J., dissent-
ing); *Louisiana*, 488 U. S., at 990 (White, J., dissenting); *Ne-
braska* v. *Colorado*, 577 U. S. 1211 (2016) (THOMAS, J.,
joined by ALITO, J., dissenting); *Arizona* v. *California*, 589
U. S. ___ (2020) (same). And scholars have criticized the
practice. See, *e.g.,* R. Fallon, J. Manning, D. Meltzer, & D.
Shapiro, Hart and Wechsler's The Federal Courts and the
Federal System 275 (7th ed. 2015); Shapiro, Jurisdiction
and Discretion, 60 N. Y. U. L. Rev. 543, 561, 576 (1985);
Stevenson, 1982 B. Y. U. L. Rev*.,* at 747–748. But the Court
has not relented.

                               II

   The practice of refusing to permit the filing of a complaint
in cases that fall within our original jurisdiction is question-
able, and that is especially true when, as in this case, our
original jurisdictional is exclusive. As the history recounted
above reveals, the Court adopted this practice without ever
providing a convincing justification. The principal reason

provided—that entertaining all suits between two States would crowd out consideration of more important matters on our appellate docket—rests on a dubious factual premise and, in any event, is essentially indistinguishable from the justification given by the imaginary district court judge with a distaste for diversity cases. And the suggestion in *Louisiana* v. *Texas*, 176 U. S., at 15, that we should hesitate to entertain suits between two States because they are of a "delicate and grave" character seems exactly backwards. It is precisely because these disputes have a "delicate and grave" character that they were placed exclusively in our hands. See The Federalist No. 81, p. 487 (C. Rossiter ed. 1961) (A. Hamilton) ("In cases in which a State might happen to be a party, it would ill suit its dignity to be turned over to an inferior tribunal"); *California* v. *Arizona*, 440 U. S. 59, 65–66 (1979). Unlike the regional courts of appeals, the federal district courts, and the state courts, we are not tied to any region or State and were therefore entrusted with the responsibility of adjudicating cases where the suspicion of local bias may run high. Cf. The Federalist No. 80 (A. Hamilton); *Chisholm* v. *Georgia*, 2 Dall. 419, 475 (1793). The present case is just such a suit.

## III

This case involves a dispute between our two most populous States. In 2016, the California Legislature enacted a law, AB 1887, that prohibits state-funded or state-sponsored travel to any State whose laws fail to meet specified standards regarding discrimination on the basis of sexual orientation, gender identity, or gender expression. See Cal. Govt. Code Ann. §11139.8 (West). The law authorizes the California attorney general to identify States that should be subject to the ban, §11139.8(e)(1), and as of the date of the filing of Texas's motion, 11 States had been targeted: Alabama, Iowa, Kansas, Kentucky, Mississippi, North Car-

olina, Oklahoma, South Carolina, South Dakota, Tennessee, and Texas. According to press releases issued by California Attorney General Becerra and the State's website, 9 of the 11 States were subjected to the ban because of laws or practices designed to protect religious liberty.[2] Iowa was placed on the list because it won't provide Medicaid coverage for gender-reassignment surgery. See California Will Restrict State-Funded and State-Sponsored Travel to Iowa (Sept. 13, 2019), https://oag.ca.gov/news/press-releases/attorney-general‑becerra‑california‑will‑restrict-state-funded-and-state-1. Travel to North Carolina was banned because the State enacted a law requiring state agencies to maintain separate-sex bathrooms and changing facilities and that prohibited certain local antidiscrimination ordinances. See North Carolina Remains on List of Restricted States (Apr. 12, 2017), https://oag.ca.gov/news/press-releases/attorney-general-xavier-becerra-north-carolina-remains-list-restricted-states. Several of the States placed on California's list have retaliated by imposing similar restrictions on state-funded or state-sponsored travel to California. See Press Release, Office of Okla. Governor, Stitt Issues Executive Order Banning State-Funded Travel to California (Jan. 23, 2020), https://www.governor.ok.gov/articles/press_releases/stitt-issues-executive-order-banning-

──────────

[2] See California Will Restrict State-Funded and State-Sponsored Travel to South Carolina (Apr. 2, 2019), https://oag.ca.gov/news/press-releases/attorney-general-becerra-california-will‑ restrict ‑ state ‑ funded ‑ and-state-0; California Will Restrict State-Funded and State-Sponsored Travel to Oklahoma (June 1, 2018), https://oag.ca.gov/news/press-releases/ attorney ‑ general ‑ becerra-california-will-restrict-state-funded-and-state; Alabama, Kentucky, South Dakota and Texas Added to List of Restricted State Travel (June 22, 2017), https://oag.ca.gov/news/press-releases/attorney-general-becerra-alabama-kentucky-south-dakota-and-texas-added-list; Cal. Dept. of Justice, Frequently Asked Questions (FAQs)—AB 1887: Why Are the States on the Travel Prohibition List?, https://www.oag.ca.gov/ab1887/faqs (citing Kansas, Mississippi, and Tennessee laws).

state-funded-; A. Sher, Legislators Strike Back at California Ban on State-Funded Travel to Volunteer State, Chattanooga Times Free Press, Mar. 16, 2018, 2018 WLNR 8221967.

In seeking to file its complaint, Texas argues that this is precisely the type of dispute for which our exclusive original jurisdiction was designed. Texas writes that "'the model case for [the] invocation of [our] original jurisdiction is a dispute between States of such seriousness that it would amount to *casus belli* if the States were fully sovereign.'" Brief in Support of Motion for Leave To File Bill of Complaint 15 (quoting *Texas* v. *New Mexico*, 462 U. S., at 571, n. 18; first alteration in original). Texas notes that economic sanctions have often roiled international relations and have sometimes led to war. Brief in Support of Motion, 15–18. And Texas reminds us that the Founders were well aware of the danger of economic warfare between States. See *id.,* at 15–16 (citing The Federalist No. 7 (A. Hamilton)).

The Republic of Texas was an independent nation for 10 years (1836–1846), and the California Republic claimed a similar status for a brief time in 1846. If they were independent nations today, it is entirely possible that their dispute would be the source of considerable international tension. As sovereign nations, they might resolve their dispute by diplomacy, by submitting it to international arbitration, or by self-help measures. When they entered the Union, these two behemoths relinquished the full measure of sovereign power that they once possessed, see *Franchise Tax Bd.*, 587 U. S., at \_\_\_–\_\_\_ (slip op., at 13–15), but they acquired the right to have their disputes with other States adjudicated by the Nation's highest court.

The Court now denies Texas that right. It will not even permit the filing of Texas's bill of complaint. This understanding of our exclusive original jurisdiction should be reexamined. At a minimum, we should note probable jurisdiction and receive briefing and argument on the question.

Texas raises novel constitutional claims, arguing that California's travel ban violates the Privileges and Immunities Clause, U. S. Const., Art. IV, §2, cl. 1, the Commerce Clause, Art. I, §8, cl. 3, and the Equal Protection Clause, Amdt. 14, §1. I express no view regarding any of those claims, but I respectfully dissent from the Court's refusal even to permit the filing of Texas's complaint.