# SUPREME COURT OF THE UNITED STATES

ALABAMA, ET AL. *v.* CALIFORNIA, ET AL.

ON MOTION FOR LEAVE TO FILE A BILL OF COMPLAINT

No. 158, Orig.   Decided March 10, 2025

The motion for leave to file a bill of complaint is denied.

JUSTICE THOMAS, with whom JUSTICE ALITO joins, dissenting from the denial of motion for leave to file complaint.

The Court once again denies leave to file a complaint in a suit between States. Alabama and 18 other States moved for leave to file a complaint against California, Connecticut, Minnesota, New Jersey, and Rhode Island. The plaintiff States allege that the defendant States are attempting to "dictate interstate energy policy" through the aggressive use of state-law tort suits. Bill of Complaint 1–3. On the plaintiff States' account, these suits seek to "impos[e] ruinous liability and coercive remedies on energy companies . . . based on out-of-state conduct with out-of-state effects," for the purpose of placing a "global carbon tax on the traditional energy industry." *Id.*, at 1–2. The plaintiff States contend that this practice violates the horizontal separation of powers, the Federal Government's exclusive authority over interstate emissions, and the Commerce Clause. I would grant the plaintiff States leave to proceed.

As I have previously explained, the Court's assumption that it has "discretion to decline review" in suits between States is "suspect" at best. *Arizona* v. *California*, 589 U. S. \_\_\_, \_\_\_ (2020) (opinion dissenting from denial of motion for leave to file complaint) (slip op., at 1); accord, *Nebraska* v. *Colorado*, 577 U. S. 1211, 1211–1213 (2016) (same). "The Constitution establishes our original jurisdiction in mandatory terms." *Arizona*, 589 U. S., at \_\_\_ (opinion of THOMAS, J.) (slip op., at 1). Article III states that, "[i]n all Cases . . . in which a State shall be [a] Party, the supreme Court *shall*

have original jurisdiction." §2, cl. 2 (emphasis added).  And, Congress has made our original jurisdiction "exclusive" in "all controversies between two or more States."  28 U. S. C. §1251(a).  Given our "virtually unflagging obligation . . . to exercise the jurisdiction given" to us, our jurisdiction in this context would seem to be compulsory.  *Colorado River Water Conservation Dist.* v. *United States*, 424 U. S. 800, 817 (1976).

Yet, the Court routinely "decline[s] to exercise its exclusive original jurisdiction in state-versus-state cases."  *Texas* v. *California*, 593 U. S. ___, ___ (ALITO, J., dissenting from denial of motion for leave to file complaint) (slip op., at 6) (collecting cases).  It has done so as part of a broader policy of making only "sparing use" of our original jurisdiction, wherein we restrict our review to "appropriate" cases.  *Illinois* v. *Milwaukee*, 406 U. S. 91, 93–94 (1972).

This discretionary approach is a modern invention that the Court has never persuasively justified.  See *Texas*, 593 U. S., at ___–___ (opinion of ALITO, J.) (slip op., at 3–6) (chronicling history).  For example, in *Ohio* v. *Wyandotte Chemicals Corp.*, 401 U. S. 493 (1971), the Court admitted that "it may initially have been contemplated that this Court would always exercise its original jurisdiction when properly called upon to do so."  *Id.*, at 497.  But, the Court declared, "changes in the American legal system" and the "development of American society" had rendered the mandatory exercise of original jurisdiction "untenable, as a practical matter."  *Ibid. Wyandotte* was a case falling under our nonexclusive original jurisdiction, but the Court has made the same judgment with respect to our exclusive original jurisdiction, including in cases between States: Limiting our exercise of original jurisdiction is necessary, the Court has claimed, "'so that our increasing duties with the appellate docket will not suffer.'"  *Arizona* v. *New Mexico*, 425 U. S. 794, 797 (1976) (*per curiam*) (quoting *Illinois*, 406 U. S., at 93–94).

THOMAS, J., dissenting

In my view, such prudential decisions are not ours to make. The Constitution and Congress have set the bounds of our original jurisdiction. Those parameters should be conclusive: "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens* v. *Virginia*, 6 Wheat. 264, 404 (1821) (Marshall, C. J., for the Court).

The Court's reluctance to accept jurisdiction in cases between the States is also troubling because this Court is the only court that can hear such cases. "If this Court does not exercise jurisdiction over a controversy between two States, then the complaining State has no judicial forum in which to seek relief." *Nebraska*, 577 U. S., at 1212 (opinion of THOMAS, J.). Accordingly, the Court today leaves the 19 plaintiff States without any legal means of vindicating their claims against the 5 defendant States.

We should revisit this discretionary approach. Our exclusive original jurisdiction over suits between States reflects a determination by the Framers and by Congress about the need "to open and keep open the highest court of the nation" for such suits, in recognition of the "rank and dignity" of the States. *Ames* v. *Kansas ex rel. Johnston*, 111 U. S. 449, 464 (1884); see *Texas*, 593 U. S., at \_\_\_ (opinion of ALITO, J.) (slip op., at 7). Yet, this Court has—essentially for policy reasons—assumed a power to summarily turn away suits between States. The Court today exercises that power to reject a suit involving nearly half the States in the Nation, which alleges serious constitutional violations. Because I would at least allow the plaintiff States to file their complaint, I respectfully dissent from the Court's denial of leave to file.